## UNITED STATES *v.* WUNDERLICH ET AL.

No. 11.   Argued November 6, 1951.—Decided November 26, 1951.

*Paul A. Sweeney* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Baldridge* and *Morton Liftin.*

*Harry D. Ruddiman* argued the cause for respondents. With him on the brief was *John W. Gaskins.*

MR. JUSTICE MINTON delivered the opinion of the Court.

This Court is again called upon to determine the meaning of the "finality clause" of a standard form government contract.   Respondents agreed to build a dam for the United States under a contract containing the usual

"Article 15."* That Article provides that all disputes involving questions of fact shall be decided by the contracting officer, with the right of appeal to the head of the department "whose decision shall be final and conclusive upon the parties thereto." Dissatisfied with the resolution of various disputes by the department head, in this instance the Secretary of the Interior, respondents brought suit in the Court of Claims. That court reviewed their contentions, and in the one claim involved in this proceeding set aside the decision of the department head. 117 Ct. Cl. 92. Although there was some dispute below, the parties now agree that the question decided by the department head was a question of fact. We granted certiorari, 341 U. S. 924, to clarify the rule of this Court which created an exception to the conclusiveness of such administrative decision.

The same Article 15 of a government contract was before this Court recently, and we held, after a review of the authorities, that such Article was valid. *United States* v. *Moorman,* 338 U. S. 457. Nor was the *Moorman* case one of first impression. Contracts, both governmental and private, have been before this Court in several cases in which provisions equivalent to Article 15 have been approved and enforced "in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment . . . ." *Kihlberg* v. *United States,* 97 U. S. 398, 402; *Sweeney* v. *United States,* 109 U. S. 618, 620; *Martinsburg & P. R.*

---

*"ARTICLE 15. *Disputes.*—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed."

*Co.* v. *March,* 114 U. S. 549, 553; *Chicago, S. F. & C. R. Co.* v. *Price,* 138 U. S. 185, 195.

In *Ripley* v. *United States,* 223 U. S. 695, 704, gross mistake implying bad faith is equated to "fraud." Despite the fact that other words such as "negligence," "incompetence," "capriciousness," and "arbitrary" have been used in the course of the opinions, this Court has consistently upheld the finality of the department head's decision unless it was founded on fraud, alleged and proved. So fraud is in essence the exception. By fraud we mean conscious wrongdoing, an intention to cheat or be dishonest. The decision of the department head, absent fraudulent conduct, must stand under the plain meaning of the contract.

If the decision of the department head under Article 15 is to be set aside for fraud, fraud should be alleged and proved, as it is never presumed. *United States* v. *Colorado Anthracite Co.,* 225 U. S. 219, 226. In the case at bar, there was no allegation of fraud. There was no finding of fraud nor request for such a finding. The finding of the Court of Claims was that the decision of the department head was "arbitrary," "capricious," and "grossly erroneous." But these words are not the equivalent of fraud, the exception which this Court has heretofore laid down and to which it now adheres without qualification.

Respondents were not compelled or coerced into making the contract. It was a voluntary undertaking on their part. As competent parties they have contracted for the settlement of disputes in an arbitral manner. This, we have said in *Moorman,* Congress has left them free to do. *United States* v. *Moorman, supra,* at 462. The limitation upon this arbitral process is fraud, placed there by this Court. If the standard of fraud that we adhere to is too limited, that is a matter for Congress.

Since there was no pleading of fraud, and no finding of fraud, and no request for such a finding, we are not

disposed to remand the case for any further findings, as respondents urge. We assume that if the evidence had been sufficient to constitute fraud, the Court of Claims would have so found. In the absence of such finding, the decision of the department head must stand as conclusive, and the judgment is

*Reversed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE REED concurs, dissenting.

Law has reached its finest moments when it has freed man from the unlimited discretion of some ruler, some civil or military official, some bureaucrat. Where discretion is absolute, man has always suffered. At times it has been his property that has been invaded; at times, his privacy; at times, his liberty of movement; at times, his freedom of thought; at times, his life. Absolute discretion is a ruthless master. It is more destructive of freedom than any of man's other inventions.

The instant case reveals only a minor facet of the age-long struggle. The result reached by the Court can be rationalized or made plausible by casting it in terms of contract law: the parties need not have made this contract; those who contract with the Government must turn square corners; the parties will be left where their engagement brought them. And it may be that in this case the equities are with the Government, not with the contractor. But the rule we announce has wide application and a devastating effect. It makes a tyrant out of every contracting officer. He is granted the power of a tyrant even though he is stubborn, perverse or captious. He is allowed the power of a tyrant though he is incompetent or negligent. He has the power of life and death over a private business even though his decision is grossly erroneous. Power granted is seldom neglected.

The principle of checks and balances is a healthy one. An official who is accountable will act more prudently. A citizen who has an appeal to a body independent of the controversy has protection against passion, obstinacy, irrational conduct, and incompetency of an official. The opinion by Judge Madden in this case expresses a revulsion to allowing one man an uncontrolled discretion over another's fiscal affairs. We should allow the Court of Claims, the agency close to these disputes, to reverse an official whose conduct is plainly out of bounds whether he is fraudulent, perverse, captious, incompetent, or just palpably wrong. The rule we announce makes government oppressive. The rule the Court of Claims espouses gives a citizen justice even against his government.

MR. JUSTICE JACKSON, dissenting.

It is apparent that the Court of Claims, which deals with many such cases while we deal with few, has reached a conclusion that contracting officers and heads of departments sometimes are abusing the power of deciding their own lawsuits which these contract provisions give to them. It also is apparent that the Court of Claims does not believe that our decision in *United States* v. *Moorman,* 338 U. S. 457, completely closed the door to judicial relief from arbitrary action unless it also is fraudulent in the sense of "conscious wrongdoing, an intention to cheat or be dishonest." Nor could I have believed it.

Granted that these contracts are legal, it should not follow that one who takes a public contract puts himself wholly in the power of contracting officers and department heads. When we recently repeated in *Moorman* that their decisions were " 'conclusive, unless impeached on the ground of fraud, *or such gross mistake as necessarily implied bad faith,*' " *id.,* at 461 (emphasis supplied), I supposed that we meant that part of the reservation for which I have supplied emphasis. Today's

decision seems not only to read that out of the *Moorman* decision, but also to add an exceedingly rigid meaning to the word "fraud."

Undoubtedly contracting parties can agree to put decision of their disputes in the hands of one of them. But one who undertakes to act as a judge in his own case or, what amounts to the same thing, in the case of his own department, should be under some fiduciary obligation to the position which he assumes. He is not at liberty to make arbitrary or reckless use of his power, nor to disregard evidence, nor to shield his department from consequences of its own blunders at the expense of contractors. He is somewhat in the position of the lawyer dealing with his client or the doctor with his patient, for the superiority of his position imposes restraints appropriate to the trust. Though the contractor may have covenanted to be satisfied with what his adversary renders to him, it must be true that he who bargains to be made judge of his own cause assumes an implied obligation to do justice. This does not mean that every petty disagreement should be readjudged, but that the courts should hold the administrative officers to the old but vanishing standard of good faith and care.

I think that we should adhere to the rule that where the decision of the contracting officer or department head shows "such gross mistake as necessarily to imply bad faith" there is a judicial remedy even if it has its origin in overzeal for the department, negligence of the deciding official, misrepresentations—however innocent—by subordinates, prejudice against the contractor, or other causes that fall short of actual corruption. Men are more often bribed by their loyalties and ambitions than by money. I still believe one should be allowed to have a judicial hearing before his business can be destroyed by administrative action, although the Court again thinks otherwise. Cf. *Ewing* v. *Mytinger & Casselberry,* 339 U. S. 594, 604.