## WILDERMUTH et al. v. UNITED STATES.
### No. 10448.

United States Court of Appeals
Seventh Circuit.

Feb. 1, 1952.

Rehearing Denied April 17, 1952.

Camden R. McAtee, Washington, D. C., Ora L. Wildermuth, Gary, Ind., for appellant.

Gilmore S. Haynie, U. S. Atty., Ft. Wayne, Ind., James E. Keating, Asst. U. S. Atty., South Bend, Ind., Holmes Baldridge, Asst. Atty. Gen., Herman Wolkinson, Attorney, Department of Justice, Washington, D. C., for appellee.

Before MAJOR, Chief Judge, and KERNER and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

By this action, brought under the Tucker Act, as amended, 28 U.S.C. § 1346(a) (2), plaintiffs sought to recover the sum of $9,-795, claimed to be due for architectural services rendered under a contract of employment by the United States executed on April 6, 1942.

On March 2, 1942, the President, having officially ascertained that an acute shortage of school facilities existed in Calumet Township, Lake County, Indiana, advised the Federal Works Administrator that use of federal funds had been approved for construction of a 10 room school house, at that location, for an estimated cost of $84,000. Shortly later, the Administrator contracted with plaintiffs for "all professional [architectural] services necessary for the development" of such a project, as authorized by the Lanham Act, as amended, 55 Stat. 362, 42 U.S.C.A. § 1532. Included in the contract, among others, were the following provisions:

"13. Abandonment of Project. If the Administrator shall at any time during the

performance of this contract deem it expedient or if it shall become necessary for the Government to abandon or involuntarily defer the work under this contract or any part thereof before completion of the services to be rendered hereunder the Architect/Engineer shall be entitled to just and equitable compensation as determined by the Administrator for any uncompensated work satisfactorily performed prior to such time."

&ast; &ast; &ast; &ast; &ast; &ast;

"18. Disputes. All disputes arising under the contract shall be decided by the Administrator whose decision shall be final and conclusive upon the parties hereto. &ast; &ast; &ast;"

When the project was later abandoned, on October 28, 1942, a dispute arose over plaintiffs' compensation, due to the following circumstances. The written agreement, as originally proffered plaintiffs, provided, in part, that "The government will pay to the Architect a fixed fee of $3,600 dollars, which shall constitute complete compensation for the Architect's services. &ast; &ast; &ast; 70 percent will be paid upon the approval, by the Administrator, &ast; &ast; &ast; of the documents required to be submitted under Section 2(b) hereof. [This section required submission of four sets of preliminary studies, drawings, cost estimates and progress schedules, etc.]; 20 percent will be paid upon the award of the major construction contract; and the balance will be paid upon the completion and acceptance of all work required for the completion of the Project." Before signing the tendered contract plaintiffs appended a rider to the quoted clause reading: "Except that the above fee is based on an estimated construction cost of $73,660 and, if this &ast; &ast; &ast; cost (is) exceeded by more than five (5%) percent, then this fixed fee shall be adjusted in proportion to the actual or estimated construction cost." Plaintiffs then executed the writing, as amended by the rider, in duplicate, and forwarded both copies to Washington, for defendant's approval.

At this point the parties diverge. Defendant insists that, upon receipt of the document, it advised plaintiffs by telephone that the rider would have to be deleted and that plaintiffs thereupon consented to its removal. This assertion was supported by a contemporaneous office memorandum of the conversation. Plaintiffs denied all recollection of the occurrence, and emphatically insisted that they never consented to the excision of the rider. In addition, defendant offered the original document (i. e., the first impression of the contract) which bore no rider. Where it had been attached the word "Insert" was partially obliterated by ink scratches, accompanied by the initials "D.R.K." (apparently those of D. R. Kennicott, Regional Engineer of the Federal Works Administration). Plaintiffs, in rebuttal, produced their carbon copy of the contract, duly executed by defendant and containing the rider.

We return to the uncontroverted facts. Plaintiffs prepared preliminary drawings for a 10 room school building to cost $73,660, which were submitted to the regional engineer. It having been found later that adequate facilities could not be constructed for that sum, plaintiffs, at the request of the regional engineer, prepared additional preliminary drawings for a 10 room building to cost an estimated $123,046. These drawings were submitted, but, prior to their approval, a still larger building of 13 rooms, costing an estimated $169,048, was proposed. Plaintiffs then submitted preliminary drawings for this building, which were accepted. However, prior to any construction work, the Federal Works Administration completely abandoned the project. At that time plaintiffs had been paid $2,520 (70% of $3,600).

Plaintiffs applied for additional compensation under Clause 13 of the contract. They were informally offered, and rejected, $4,615 as full settlement. They then pursued the dispute provisions of Clause 18, seemingly on the grounds that they were equitably entitled to additional compensation. They presented a claim to the Commissioner of the Bureau of Community

Facilities [1] the essence of which was that they had prepared three sets of preliminary drawings; that they had received the "approval fee" (*i. e.,* 70% of the total) on only one set, namely the first; that, by the terms of the rider, coupled with the fact that two additional sets had been prepared and submitted, they were entitled to 70% of two additional fees, computed on the basis of the increased estimated costs of each of the proposed buildings. The Commissioner denied their claim on the following grounds: (1) that, inasmuch as the rider had been excised from the contract with plaintiffs' permission, plaintiffs' compensation was limited to 70% of $3,600; (2) that, irrespective of the effect or existence of the rider, plaintiffs could not recover, as the Administrator had no authority under the Lanham Act to contract for any work other than that approved by the President, and the two enlarged projects had not been so approved.[2] He found further that plaintiffs had no equitable claim, as they had disposed of their plans for $8,150, when in 1944, the Calumet School Township undertook, with substantial financial assistance from the government, the construction of a 13 room school house.

In their complaint in the District Court, plaintiffs set forth the contract, including the rider, and averred that they had been compensated for only the first set of drawings. The trial court determined first that the rider had been excised from the contract, with the consent of both parties.[3] It then concluded that, by the terms of the agreement, the Commissioner's decision on any dispute arising thereunder was "final

and conclusive"; that such a clause was valid and binding on the parties; and that, absent a showing of bad faith or gross error, his decision was binding on the court. Judgment for defendant was entered, from which plaintiffs appeal, asserting that the trial court erred: (1) in finding that the rider had been properly deleted from the contract, and, (2) in holding that the determination of the Commissioner was binding and conclusive.

Although there may be some merit to plaintiffs' first contention, we feel that the case can best be disposed of upon the second issue, viz., the validity and effect of the dispute clause and the consequent effect of the Commissioner's decision thereunder. This is particularly true in view of the latter's ruling that, regardless of the presence of the rider, plaintiffs were not entitled to additional compensation inasmuch as the President had not approved the second and third projects.

It should be borne in mind that the dispute settlement clause here involved is general in its terms, *i. e.,* it encompasses "all disputes arising under the contract." Thus, whether the instant dispute be one of fact or law, if the clause is valid, the Commissioner's decision, by the express terms of the contract, is "final and conclusive," absent, of course, vitiating circumstances. A review of the decisions of the United States Supreme Court indicates clearly that such a clause is valid and that decisions rendered under it are binding on the parties thereto.

As early as 1878 the Court was called upon to determine the validity and effect

---

1. At trial defendant moved for summary judgment on the ground that plaintiffs, by petitioning the Commissioner of the Bureau of Community Facilities rather than the Federal Works Administrator, had failed to exhaust their administrative remedies as established by the contract. United States v. Blair, 1944, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039. The motion was denied, as the functions of the Federal Works Administrator created under the Lanham Act, had been transferred to the Bureau of Community Facilities by administrative order. 44 C.F.R. Sec. 212.1 (Supp.1946). Defendant has not challenged this ruling.

2. See Title II, Sec. 202 of Lanham Act, 55 Stat. 362, 42 U.S.C.A. § 1532.

3. Pursuing this reasoning the court concluded that only the final plans had been accepted; that Clauses 8 and 13 indicated that "although the contract was drafted on the basis of a ten-classroom building, it was intended to govern the rights of the parties in the event the scope of the project was increased or decreased"; consequently plaintiffs were entitled to compensation for the finally accepted plans, such fee being set at a maximum of $3,600 by the terms of the contract.

of a clause which provided that the distances upon which fees for the shipment of Army stores would be fixed were "to be ascertained and fixed by the chief quartermaster." Kihlberg v. United States, 97 U.S. 398, 24 L.Ed. 1106. Sustaining the clause and a decision rendered under it, the Court said, 97 U.S. at page 401: "The terms by which the power was conferred and the duty imposed are clear and precise. * * * His action cannot, therefore, be subjected to the revisory power of the courts without doing violence to the plain words of the contract." While this case was concerned only with a question of fact, in 1900, the Court extended the rationale to "all or specified matters of dispute" when, in a considered dictum, in United States v. Gleason, 175 U.S. 588, 602, 20 S.Ct. 228, 233, 44 L.Ed. 284, it said: "It is competent for parties * * * to * * * contract that the decision of an * * * officer of all or specified matters of dispute * * * shall be final and conclusive". Then, in 1926, all doubts seem to have been resolved by Goltra v. Weeks, 271 U.S. 536, 46 S.Ct. 613, 617, 70 L.Ed. 1074. There plaintiff was the lessee of government ships. The lease provided for its termination by the lessor, Chief of Engineers, if, in his judgment, the lessee "was not complying with the obligations of the contract". In sustaining a termination thereunder, the Court said, 271 U.S. at page 548, 46 S.Ct. at page 617: "The cases leave no doubt that such a provision for termination is valid * * *. Such a stipulation may be a harsh one, or an unwise one, but it is valid and binding if entered into. * * * Nor does the circumstance that as in this case the lessor whose judgment is to prevail is a party to the contract alter the legal result."

The Court became more explicit in the recent case of United States v. Moorman, 1950, 338 U.S. 457, 70 S.Ct. 288, 289, 94 L.Ed. 256. There the government had

contracted with Moorman as follows: "If the contractor considers any work demanded of him to be outside the requirements of the contract * * * the contractor shall * * * submit his protest * * * to the contracting officer * * *. If the contractor is not satisfied with the decision of the contracting officer, he may, * * * appeal in writing to the Secretary of War, whose decision * * * shall be final and binding * * *." In upholding this clause, the Court declared, 338 U.S. at page 462, 70 S.Ct. at page 291: "A conclusion that the question here is one of law cannot remove [it] from the ambit" of the dispute provision. "That section expressly covers all claims by a contractor who * * * 'considers any work demands of him to be outside the requirements of the contract'". See also United States v. Wunderlich, 1951, 342 U.S. 98 72 S.Ct. 154; United States v. Blair, 1944, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039; United States v. John McShain, Inc., 1939, 308 U.S. 512, 520, 60 S.Ct. 134, 84 L.Ed. 437; United States v. Mason & Hanger Co., 1922, 260 U.S. 323, 43 S.Ct. 128, 67 L.Ed. 286; Plumley v. United States, 1913, 226 U.S. 545, 547, 33 S.Ct. 139, 57 L.Ed. 342; English Construction Co. v. United States, D.C.Del., 43 F.Supp. 313; Tobin Quarries v. Central Nebraska Public P. & I. Dist., D.C.Neb., 64 F.Supp. 200, affirmed, 8 Cir., 157 F.2d 482.

Since the Moorman decision only one court of appeals has expressed any thought of a right to consider a dispute clause encompassing questions of law. Lindsay v. United States, 9 Cir., 181 F.2d 582, 584. That court, in an obiter statement, indicated that such a clause could not be sustained if it were interpreted as including questions of law. However, if we are to give significance to the Moorman case, it appears inescapable that whatever doubt may have lingered in prior Supreme Court decisions,[4] all questions are banished by

---

4. United States v. Beuttas, 1945, 324 U.S. 768, 771–772, 65 S.Ct. 1000, 1002, 89 L.Ed. 1354: "The parties devoted much of their argument here to the question whether only questions of fact, or questions of mixed law and fact can by contract be made subject to final determination by an administrative officer of the Government or whether a question of law may also, by contract, be made subject to final determination by such an officer. Our cases have not explicitly drawn any distinction between the two categories."

the clear-cut terms of Moorman. It stands unequivocally for the proposition that to-day, if not before, parties to a government contract can validly provide that all disputes, whether they be of law or fact, be decided by one of their group, and that such a decision is, by the terms of this contract, "final and conclusive."

But even finality, at least as used in this context, is a relative term, relative, that is, to the circumstances that surround the decision rendered by the Commissioner. If those circumstances are of such character as to vitiate his determination, it may be set aside. What then are the factors which will work to impair his findings? Again the statements of the Supreme Court are fully enlightening.

In the Kihlberg case, supra, it was stated, 97 U.S. at page 401 that "There is neither allegation nor proof of fraud or bad faith. His [the quartermaster's] action cannot, therefore, be subjected to the revisory power of the courts * * *." Later the Court deviated slightly from this test when it indicated that, in addition to fraud, it would take cognizance of "mistake so gross as to necessarily imply bad faith". United States v. Gleason, supra, 175 U.S. at page 602, 20 S.Ct. at page 233. Then, in Ripley v. United States, 1912, 223 U.S. 695, 701–702, 32 S.Ct. 352, 355, 56 L.Ed. 614, the burden was relaxed as the Court said: "But the very extent of the power and the conclusive character of his decision raised a corresponding duty that the agent's judgment should be exercised not capriciously or fraudulently, but reasonably, and with due regard to the rights of both the contracting parties." Thus a fiduciary duty of sorts was imposed upon the arbiter. See also Justice Jackson, dissenting in United States v. Wunderlich, 1951, 342 U.S. 98, 103, 72 S.Ct. 154.

But it was for the Moorman case, supra, modified and clarified by the Wunderlich decision, supra, to establish an affirmative showing of fraud as the proper weapon of attack. In Moorman the Court held that a determination under such a clause was "conclusive, unless impeached on the ground of fraud, or such gross mistake as necessarily implied bad faith." This was reduced to stark clarity by Mr. Justice Minton's opinion in the Wunderlich case, decided November 26, 1951, where, having referred to the Moorman decision, he proceeded: "So fraud is in essence the exception. By fraud we mean *conscious* wrongdoing, an *intention* to cheat or be dishonest. * * * If the [decision] * * * is to be set aside for fraud, fraud should be *alleged* and *proved, as it is never presumed.*" (Emphasis supplied.) (72 S.Ct. page 155.)

Plaintiffs' complaint reveals no averment which so much as hints of fraud. Indeed, during oral argument, counsel for plaintiffs admitted that it was not his purpose to attempt to show such conduct on the part of the Commissioner. Furthermore, no proof tending to show fraud in the remotest sense was introduced. With the record in this state, the trial court had no choice other than to accept as "final and conclusive" the Commissioner's determination that plaintiffs were not entitled to additional compensation.

In the light of the foregoing it is clear that this court may not properly undertake to set aside the determination of the Commissioner. But, in view of the narrow scope of our review, we feel constrained to state briefly that, in our opinion the Commissioner's ultimate decision was correct. We think it clear that he was given no authority, by the terms of the contract, to determine if the rider was or was not a part of the final agreement. The operation of the dispute clause is premised on the existence of the contract; how then can a function created by, and dependent upon an agreement, be utilized to ascertain the literal existence of that agreement? See Williston on Contracts, Sec. 1920 (Rev. Ed.). Consequently, it was proper for the trial court to determine *de novo* whether the rider formed a part of the contract. However, the soundness of the trial court's decision on this matter has become immaterial in view of what we have previously said.

The Commissioner's ultimate decision, viz., that, irrespective of the rider, plaintiffs were not entitled to additional compensation as a matter of law, was

sound. The Lanham Act, as amended, 55 Stat. 362, 42 U.S.C.A. § 1532, provides that the Administrator can undertake such a project as is here involved "with the approval of the President". In Puerto Rico Ry. Light & Power Co. v. United States, 1 Cir., 131 F.2d 491, 496, the only reported case interpreting this language, it was held to require the "approval [of] the particular project determined upon by the Administrator". It cannot be said that approval of a $73,660 project can be extended to cover first a $123,046 and then a $169,028 undertaking. In the absence of any showing of presidential approval of these latter projects, the Administrator lacked the authority to contract for their performance. It is axiomatic that contracts with the government must be in strict conformity with the authority conferred before they are enforceable. Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10; Hawkins v. United States, 1877, 6 Otto 689, 96 U.S. 689, 24 L.Ed. 607; In re Floyd Acceptances, 1868, 7 Wall. 666, 74 U.S. 666, 19 L.Ed. 169; Mechem on Agency, Sec. 763 (2nd Ed.). Nor will the doctrine of estoppel work for the benefit of plaintiffs in their suit against the government. Utah Power & Light Co. v. United States, 1917, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791.

The judgment is affirmed.