## UNITED CONST. CO.
## v.
## UNITED STATES.
### No. 49526.

United States Court of Claims.
May 4, 1954.

Edward Gallagher, Washington, D. C., for plaintiff.

William A. Stern II, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant. Mary K. Fagan, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

JONES, Chief Judge.

This case involves a construction contract. The issue relates to the proper classification of materials that were excavated in carrying out the terms of the contract.

The contract, dated March 12, 1945, was for the construction of certain irrigation trenches and installations for the Bureau of Reclamation at the Deschutes Project in the State of Oregon. The plaintiff was to furnish all materials, with designated exceptions, and to perform all work required for the completion of the laterals and sublaterals.

The specifications called for submission of unit prices on 17 items of work. Pertinent details of the specifications are set out in finding 1.

The contract price for common excavation in laterals was 30 cents per cubic yard, and for rock $2.25 per cubic yard. In the excavation for structures the price

for common excavation was 75 cents, and for rock $4 per cubic yard.

According to the specifications the rock excavation included

"All solid rock in place which cannot be removed until loosened by blasting, barring, or wedging, and all boulders or detached pieces of solid rock more than one-half cubic yard in volume. Solid rock under this class, as distinguished from soft or disintegrated rock under common excavation, which also requires blasting before removal, is defined as sound rock of such hardness and texture that it cannot be loosened or broken down by hand drifting picks. No material except boulders or detached pieces of solid rock, will be classified as rock excavation, which is not actually loosened by blasting before removal, unless blasting is prohibited, and barring, wedging, or similar methods are prescribed by written order of the contracting officer."

Common excavation included "all material other than rock excavation."

Based upon the plaintiff's bid for the 17 contract items and the defendant's estimate of quantities, the consideration in the contract was estimated to total $101,395. The work was to be completed within 100 calendar days.

The contract contained the standard provisions in reference to disputes, by the terms of which all questions of fact arising under the contract were to be decided by the contracting officer, subject to an appeal to the head of the department, or his authorized representative.

The plaintiff acknowledged receipt of notice to proceed on April 12, 1945. The work was not completed until May 25, 1946; extensions of time were granted by findings of the contracting officer to cover the entire period of prolonged operations.

During the performance of the work disputes arose over the classification of material. Plaintiff complained that the estimated quantities of rock excavation were inadequate and that hardpan, disintegrated rock and cemented gravel should be paid for as rock excavation. There were numerous discussions between the contracting officer and the various contractors on the project, which included plaintiff. Substantial quantities of compact materials, such as cemented gravel and hardpan were encountered and their excavation was required under the contract. In computing the quantities for payment of monthly estimates during the progress of the work these materials were generally classified as common excavation and paid for at the contract price applicable thereto in accordance with the provisions of Paragraph 33 of the specifications which defined common excavation in the following terms:

"All materials other than rock excavation; including, but not restricted to earth, gravel, and also such hard and compact material as hardpan, cemented gravel, and soft or disintegrated rock, which cannot be removed efficiently by team-drawn scrapers or excavating machinery until loosened by blasting; also all boulders or detached pieces of solid rock not exceeding one-half cubic yard in volume."

Following the discussions the construction engineer consulted the Chief of Engineers of the Bureau of Reclamation, who was the contracting officer, in an effort to ascertain whether, regardless of the provisions of the specifications, the hardpan, cemented gravel and disintegrated rock should be excavated and paid for as rock excavation. Following this inquiry it was decided that the construction engineer should be permitted to consider and classify certain of these materials as rock excavation, recompute the quantities of excavation that had been made under the strict terms of the contract, and pay for the quantities thus ascertained at the contract price applicable to solid rock.

There were also disputes as to the total quantities involved in some of the areas of excavation and a resurvey was made under the personal supervision of the construction engineer. Representatives of the contractor accompanied the construction engineer and his party on the resurvey of the main lateral system on July 18, 1946, and made no objection to the method of reclassification used.

The construction engineer personally examined all disputed areas of excavation, dug into the slopes back to undisturbed materials, examined the spoil banks and consulted all available field records made throughout the progress of the work.

The construction engineer undertook to determine the quantities and percentages of rock and common excavation and to determine what part of the material such as hardpan should be included in the classification of rock excavation under the liberal classification authorized and adopted. In reclassifying, the construction engineer included considerable quantities of hardpan, cemented gravel, and similar materials as rock rather than as common excavation. This action resulted in an increase of the quantity of rock excavation in laterals from 6,068 to 18,293.9 cubic yards, and in the rock excavation for structures from 897 to 2,840.7 cubic yards. The quantities of common excavation were accordingly decreased.

The effect of this reclassification increased the total payment made under the contract to $138,159.85 instead of the amount which had been estimated as $101,395.

In connection with the final settlement and final voucher the contractor executed a release on the contract dated September 5, 1946; in executing this release, however, it excepted nine claims totaling $236,374.24. The items of exceptions are set out in finding 4.

Plaintiff had especially contended that it should be paid for 7,855.3 cubic yards of rock excavation in laterals and for 2,459.5 cubic yards in structures. These claims and the other items excepted from the release were reiterated in a letter from the plaintiff dated September 21, 1946, in which an early determination of plaintiff's claims by the contracting officer and the head of the department was requested.

In order to give plaintiff full opportunity to present all the facts and supporting data a conference was held in Denver on March 26 and 27, 1947, which was attended by representatives of the plaintiff. Thereafter the contracting officer sent a representative to the project to make a detailed examination of the work. On the basis of all the information obtained it was the decision of the contracting officer that all excavated materials had been properly classified by the construction engineer; that the quantities of rock excavation determined by him were accurate and that no additional payments were due the contractor. On July 25, 1947, the contracting officer rendered his findings of fact and decision, denying plaintiffs' claims and detailing the facts upon which his findings and decision were based. The contracting officer's decision is set out in finding 13. He summarized his findings as follows:

"(a) The specifications define common excavation and rock excavation.

"(b) The contractor did not object to such methods of classification of excavation as were used during the reclassification in the presence of its representatives.

"(c) Payment has been made for all excavated material, classified in accordance with the reclassification of July 18, 27, 29, and 30, 1946.

"(d) It is found that the classification was properly made in accordance with the specifications, giving the contractor the benefit of the most liberal interpretation possible.

"(e) The contractor claims that practically all of the material below

the top of the hardpan should be classified as rock. Project records show that a large part of this material was excavated without blasting and, therefore, cannot be classified as rock."

The plaintiff appealed from the decision of the contracting officer to the head of the department, whose duly authorized representative decided that plaintiff should be given further opportunity to present additional evidence in respect to its claim. A hearing was held at Bend, Oregon, on June 8 and 9, 1948, and a full transcript of the proceedings of that hearing was forwarded to the head of the department. On June 6, 1949, the head of the department, through his duly authorized representative, filed his administrative decision on plaintiff's appeal in which all facts submitted by the plaintiff in support of its claim were discussed, considered, and determined. The decision on appeal was that the plaintiff had been properly paid under the contract for all materials excavated, and that the claim should be denied. Pertinent portions of the decision of the head of the department are set out in finding 16.

The contract provision which is set out in finding 3 stipulated that all disputes concerning questions of fact arising under the contract should be decided by the contracting officer, subject to written appeal within 30 days to the head of the department or his duly authorized representative, whose decision should be final and conclusive upon the parties thereto.

The disputed items upon which any evidence was produced were questions of fact and subject to the terms of the section in reference to disputes.

No allegation of fraud or arbitrary or unreasonable action implying bad faith has been either alleged or proved. The record shows that the defendant fully examined and considered the claims of plaintiff and determined the same pursuant to the authority granted in the contract. The plaintiff therefore is not entitled to recover. United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113.

The petition is dismissed. It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.