UNITED STATES of America, Appellant,

v.

Marguerite Parlington SCOGGINS, Appellee.

No. 15410.

United States Court of Appeals Fifth Circuit.

June 30, 1955.

Rehearing Denied Aug. 6, 1955.

John C. Ford, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellant.

John A. Pace, Dallas, Tex., Scurry, Scurry & Pace, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

The Government is here appealing from a judgment against it on a National Service Life Insurance policy, contending that at the date of death of the veteran the policy had lapsed for non-payment of premiums.

Although the Veterans Administration's course of dealing with the decedent's premium payments was marked by some inconsistency and confusion, perhaps due in the main to benevolent concern for careless policyholders, the facts can be fairly simply stated.

Parlington, the veteran, had a $10,000 life policy on the term basis which was in full force through the month of April, 1946. The policy lapsed for non-payment of the May premium. Parlington nevertheless made payments on July 2, August 8, October 1, October 8 and October 17, which would have taken care of premiums for May through September, if they had been timely made. He thereafter made payments on January 15, 1947, and two on March 31, 1947. He made no further payments until after he received two letters from the Veterans Administration. The first of these, dated May 7, 1947, replying to an inquiry from Parlington, correctly stated that his policy had lapsed on May 1, 1946, that reinstatement was necessary if he desired to continue the insurance, and that there was a credit to his account of $56.80 (the eight payments above referred to made after the lapse). The second letter, dated November 28, 1947, repeated the information of the May letter, and also stated that the credit could be used for reinstatement and advance premiums after reinstatement. There was a postscript to the letter advising Parlington that in the alternative he could have a refund of his $56.80 upon his request. On January 29, 1948, Parlington filed a formal application for reinstatement on the form supplied by the Veterans Administration, stating that he wished his credit used for payment of reinstatement premiums —one month's premium for the month of lapse and one month's premium for the month of reinstatement.

In the meantime, without the matter being in any way considered in connection with Parlington's insurance account, a letter notice was issued by the Assistant Administrator for Insurance dated November 8, 1946,[1] obviously for the

1. This letter, which is the basis for the Government's case, is here copied in full:
"November 8, 1946
"Mr. C. J. Reichert, Manager
New York Branch of Central Office
Veterans Administration
346 Broadway
New York 13, New York
"My dear Mr. Reichert:
"A number of cases have come to attention in which premiums for National Service Life Insurance have been regularly paid for several months through the current month, but have not been posted as regularly paid for the reason that premiums for one or more prior months, either consecutively or at irregular intervals are missing or were not timely paid.
"It can be assumed in such cases that it was the intent of the individuals concerned to continue protection and that failure to furnish all premiums regularly was due to their inability to ascertain the exact status of their accounts.
"Based upon this assumption, and in order that effect may be given to the insured's intent to continue protection, where there has been a failure to notify the insured of lapse or where more than three months had elapsed before any

purpose of alleviating hardship resulting in situations in which veterans (we may note that this was a time when some ten million veterans were readjusting their affairs upon being released from the military services) were commencing to make directly monthly payments for premiums which had theretofore been deducted from their pay, and where gaps in monthly payments had occurred and some payments were made late, but later caught up.

Subsequently, this letter was "superseded" by a letter of May 9, 1947, which repeated the identical four paragraphs, except for the date and the addition of the following clause to the last sentence in the third paragraph, "and when corresponding with the insured care will be taken to avoid giving a contrary impression,"[2] and the dates in the last paragraph were changed by making each of them a date six months later. There was then added a significant paragraph.[3]

Then, finally, there was issued a so-called "Technical Bulletin" known as TB 9—53, on September 25, 1947, which, so far as claimed to affect this policy, merely had the effect of restating the provisions of the original letter, except that the liens required in that letter were cancelled. This TB sought to make mandatory the readjustment in accordance with the instructions therein contained.

When Parlington filed his application for reinstatement, it was processed and endorsed "reinstated 2–13–48." Under the validly existing regulations, this reinstated the policy as of the month of application, January 1948. In a letter addressed to Parlington, dated February 17, 1948, the Veterans Administration informed him (contrary to its advice to him on November 28, 1947, that he had a credit of $56.80) that "by an administrative adjustment the credit of $56.80, as shown in our letter dated November 28, 1948 [sic] was in error. The credit which existed on your account was $21.30 and was applied to pay the cost of reinstatement and one month in advance, paying your account as shown above."[4]

---

such notice was sent to him, and in the absence of information indicating that the state of his health would have precluded reinstatement, the insurance may be considered as having been continued in force provided not more than three monthly premiums are missing and premiums have been paid regularly each month for the last three months including the current month. Any such administrative adjustment will necessitate the establishment of a lien to cover the amount of the missing premium or premiums, and that the insured be notified and requested to pay the amount due. Insurance which may properly be regarded as subject to this adjustment will not be considered to have lapsed.

"The authorization to make administrative adjustments under the circumstances above outlined will expire December 31, 1946; that is, a lien may be established for the amount of missing premiums for December 1946 and prior months only. This does not preclude the making of administrative adjustments subsequent to December 31, 1946, involving the establishment of liens through that month.

"Very truly yours,
  (signed) Harold W. Breining
  Harold W. Breining
Assistant Administrator for Insurance"

2. It is significant that the letters to Parlington, dated May 7, 1947 and November 28, 1947 were for the purpose of giving a "contrary impression."

3. "While it cannot be too strongly emphasized that the conditions outlined above must be strictly observed when applying the principles set forth in this letter, in determining whether insurance is in force, all the facts and circumstances, especially in death cases, should be examined very closely in order that it may be determined whether the Veterans Administration by any act of commission or omission caused the insured to be misled regarding the status of his account or as to the requirements for reinstatement of the insurance. It is appreciated that strict observance of these conditions would preclude adjustment in some very exceptional cases where the circumstances would appear to warrant further consideration of the equities."

4. "Certificate number   N 785 33 14
 Amount of insurance   $10,000
 Effective date   1–1–43
 Amount of premium   $7.10
 Premium paid through   2–29–48
 Next premium due   3–1–48"

No explanation of any kind was made as to what happened to the $35.50 that had been taken away by "an administrative adjustment of the credit of $56.80," an amount that would have kept his policy in force for an additional five months, or through August. Parlington died on April 29, twenty-nine days after expiration of the grace period under the Administration's "administrative adjustment."

Of course, the Government cannot be estopped by its unbusinesslike handling of the deceased veteran's insurance account, but at first blush the beneficiary's claim here seems so clearly instinct with right that the court may well be expected to subject the record and the plausible legal reasoning of the Government's brief to exceptionally careful scrutiny, if that should be found necessary, in order to serve the ends of justice without violence to legal principle.

The Veterans Administration based its rejection of the claim on the proposition that where a veteran has elected to reinstate a lapsed policy by paying two months' premiums, if it should happen that he has made irregular payments while the policy was lapsed—payments for which the Administration acknowledged he was entitled to restitution—the Administration could by unilateral action and without the veteran's consent debit his account for premiums during the lapse period so as to wipe out the credit; even though the policy conferred no such power on the Administration.[5]

■ Such a contention would sound fantastic if it were put forward by a commercial insurance company. Under normal legal principles if an insurance policy lapses for non-payment of premiums and the former assured continues to make payments, the insurer, of course, holds the money for the former policyholder. The Government recognized this principle when it wrote Parlington that it held $56.80 as a credit to his account. Then by what legal principle could the Veterans Administration appropriate part of this money? It claims the right under a letter of instructions or a Technical Bulletin, which it claims has the force of law.

The solution of this problem lies, it seems to us, in two answers to the Administration's argument. The first is that the series of instructions did not, by their terms, touch the particular policy here in question; the second is that if they purported to do so in a manner that adversely affected the policyholder's rights, they would be void to that extent.

As to the first proposition, we should say at the outset that the standard of strict construction is required by the instruction letter itself. The letter of May 9, 1947, specifically stated: "While it cannot be too strongly emphasized that the conditions outlined above must be strictly observed when applying the principles set forth in this letter, etc." Now what are the conditions under which the Government claims it was required to apply the $35.50 to create the fiction that Parlington had been insured for five months in 1946? The letter of November 8, 1946, which set out the conditions [6] provided (1) there had been a failure to notify the insured of lapse: This condition was satisfied; (2) an absence of information indicating that the state of assured's health would have precluded reinstatement: This condition was satisfied; (3) not more than three monthly premiums are missing: This condition was satisfied; (4) premiums have been paid regularly each month for the last three months including the current month (November 1946): This condition was *not* satisfied. The "last three months," including November, are September, October and November, 1946. No payment was made in September; three were made in October; and none was made in November.

5. This policy of insurance is a contract, and the Government has no power by virtue of its sovereignty to repudiate or modify it to the detriment of the other contracting party. Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L. Ed. 1434.

6. Set out in full in footnote 1.

It may be argued that the language does not mean that payments must be paid regularly during each of the last three months if they *average* one each month. But the letter does not speak in terms of averages. It says "paid regularly *each month* for the last three months, etc." Thus the condition is not fulfilled if payments are irregularly made for the last three months. The requirement that there be a payment each month is expressed both in the expression "regularly," which in the context of monthly payments must mean each month, and also in the express requirement that the payments not only be "for the last three months," but that they be paid "each month." In its effort to justify the appropriation of Parlington's money, the Veterans Administration will not be heard to say that it did not mean what it said.

■ Now, lest this be considered as too technical an interpretation, it must be remembered that the very document requiring the adjustment required strict construction; furthermore, when the court is called upon to determine whether an administrative action, intended as an act of grace, has in a particular case the result of wiping out the rights of a member of the class it seeks to benefit, every rule of construction would favor that interpretation that would not defeat the salutary purpose of the administrative action.

■ We, therefore, hold that Parlington's policy did not meet the tests or conditions laid down in T.B.—53, and that the Veterans Administration had no right or power to make the administrative adjustment that deprived him of the full credit of $56.80.

The second answer need not be discussed, except for the reason that it is an answer to the proposition most strongly urged on us by the Government in its brief. How or why the position of the Veterans Administration is any different from that of a private insurance company, if it saw fit voluntarily to extend benefits to lapsed policy holders under similar circumstances, completely escapes us.[7] We, therefore, say that unless there is some provision of the policy or the statute that permits the Administration to convert this policy holder's credit balance to the payment for insurance for a long past period then this action by the Administrator is completely without justification. The Government calls no such provision of either policy or statute to our attention. There is none.

To be sure, the Government's brief contends that this action by the Administration is justified under the power of the Administration to "make rules and regulations" to "determine the terms and conditions of such insurance," and to "prescribe the time and method of the payment of the premiums.[8] This is a

7. We recognize of course that the Government can exercise broad powers under the standard provisions present in many of its contracts, such as the Termination for Convenience of the Government and Changes clauses, to cancel contracts without paying the usual contract measure of damages, and to require additional work to be done at prices to some extent fixed by the Government without the contractor's consent; and that the Government may constitutionally exercise some contractual powers even arbitrarily, as that of unilaterally determining facts under Disputes clauses, although certainly a private contracting party could not enforce such a provision. See United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113. And we do not have to decide that even without a contractual provision or statutory authority the Government may never stand in a better position than a private contractor. For here there is not only no contractual or statutory provision which justified the action of the Veterans Administration; there is also no general equitable principle or public policy which could possibly be the basis of distinguishing the Government's position from that of a private insurer. Hence, we hold that under the facts of this case there is no rational ground to hold that the Veterans Administration had any more power to take the action in question, than a private insurance company would have had.

8. Citing 38 U.S.C.A. §§ 808 and 802(o) and 802(m) (1).

specious argument. Of course, the Administrator was given the power to "determine and publish the terms and conditions of the five year level premium term policy" (which was the policy here in question); but once having fixed the terms of the policy he had no power to change those terms to the detriment of a policy holder. For us to hold that, when an administrative officer is authorized by statute to determine on the terms of a contract, this confers on him the power to alter it unilaterally, would greatly impair the power of the Government to deal by contract with its citizens. No one would willingly deal with a Government that could arbitrarily repudiate its contracts.

There is nothing here said that is inconsistent with our opinion in United States v. Holley, 5 Cir., 199 F.2d 575, cited in the Government's brief. We have here quite a different case. There a veteran's beneficiary sought to come within the voluntary grace extended by TB 9–53, supra. Of course, it was proper to hold that in order to do so he had to come within its terms. This is not to say that an act intended as an act of grace to many policy holders can be construed or made effective to deprive a policy holder, without his consent, of the rights he holds without reference to it.

It is moreover not necessary for us to pass on the effect of the Administrator's failing to publish these so-called rulings, instructions or Technical Bulletins in the Federal Register, since the rights of the parties to such an insurance policy could not be changed unilaterally even by statute. Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434.

The judgment of the trial court. was right and it is

Affirmed.