T. A. MOYNAHAN PROPERTIES, INC., Plaintiff-Appellee,

v.

LANCASTER VILLAGE COOPERA-TIVE, INC., Defendant,

v.

George W. ROMNEY, Secretary of U. S. Dept. of Housing and Urban Development, Defendant-Appellant.

No. 73-1004.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1973.

Decided May 21, 1974.

U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

John I. Bradshaw, Jr., Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD and SPRECHER, Circuit Judges, and CAMPBELL,* District Judge.

FAIRCHILD, Circuit Judge.

The judgment appealed from declared a nullity the termination by defendant Secretary of Housing and Urban Development (HUD) of a management contract between plaintiff Moynahan and defendant Lancaster, and enjoined HUD from terminating that contract or any similar one held by plaintiff without "first establishing and following appropriate standards meeting due process requirements."

Lancaster operates a cooperative housing project for lower income families. The mortgage on its property is insured by HUD. On November 9, 1970, Lancaster and Moynahan signed an agreement on an FHA "model form" under which Moynahan was appointed managing agent for Lancaster, to render services in return for fees. The mortgagee and FHA (HUD's predecessor) endorsed their consents the same date. The agreement was to be in effect for three years, unless cancelled pursuant to its terms. One of the provisions for cancellation (Eighth (d)) permitted FHA or the mortgagee to cancel the agreement on 30 days' written notice, "with or without cause." Moynahan has other similar agency agreements.

On April 26, 1972, a representative of HUD wrote to Moynahan, notifying him that the agreement was terminated as of May 31, 1972, and stating that Lancaster had requested HUD to exercise the right of termination. On May 3, Moynahan wrote to HUD stating it would like to "appeal," wanted to express its position verbally, and requested an explanation for the termination.

Stanley B. Miller, U. S. Atty., Indianapolis, Ind., Morton Hollander, Chief, Appellate Section, Jean A. Staudt, Atty.,

* Senior District Judge William J. Campbell, Northern District of Illinois, is sitting by designation.

On May 25, HUD wrote Moynahan referring to a visit at the HUD office, during the interim, but saying that HUD had no alternative but to terminate, and adding, "We wish to inform you that this action does not reflect adversely on your firm."

On June 29, 1972, Moynahan brought action in state court against Lancaster and HUD. The court restrained the cancellation and the action was removed by HUD to the federal district court. After a hearing, originally contemplating decision on whether to issue a preliminary injunction, the district court concluded it should decide the merits. The court decided that Moynahan's interest in performing the contract throughout the three years was an interest in property; that the circumstances of the cancellation rendered HUD's action arbitrary and capricious; and that due process requires notice and an opportunity to be heard if HUD wished to establish that it had a reasonable ground for cancellation. The district court declared the cancellation of the Lancaster contract a nullity and enjoined termination of Moynahan's other contracts, as well, "without first establishing and following appropriate standards meeting due process requirements." The principal facts developed at the hearing, largely without dispute, are as follows:

On March 27, 1972, the Lancaster Board adopted a resolution that in view of Moynahan's failure to agree to an amendment to the contract desired by the Board, the Board should formally withdraw from the agreement. On March 29, attorneys for Lancaster wrote to Moynahan purporting to give notice of termination. On March 31, the attorneys for Lancaster wrote Mr. Dodd, a representative of HUD, referring to the "apparent hostility" between Lancaster and Moynahan, with which they said Dodd was familiar, and asking Dodd to aid Lancaster in terminating the contract.

On April 26, a representative of HUD wrote to Moynahan that the Lancaster Board had requested HUD to exercise its right to terminate the agreement, and terminating it as of May 31, 1972. On May 3, Moynahan wrote HUD stating it would like to appeal, would like to express its position verbally, and would like an explanation of reasons for the cancellation. Evidently a representative of Moynahan visited the HUD office, and on May 25, a representative of HUD wrote Moynahan as already described, reaffirming the decision.

The parties stipulated, as follows:

"Over the period of several months in late 1971 and early 1972 a series of disputes arose between Lancaster Village Cooperative, Inc. and T. A. Moynahan Properties, Inc. which those parties were unable to resolve to their mutual satisfaction. Lancaster Village requested cancellation of the Management Agreement pursuant to paragraph Eight (b). [Termination by mutual consent.] The request was denied by T. A. Moynahan Properties. Lancaster Village Cooperative, Inc. then brought the matter to the attention of HUD."

Mr. Dodd testified that he was personally aware of the disputes referred to, that he had discussed them with representatives of Lancaster and of Moynahan, and that after the letters from the attorney for Lancaster, dated March 29 and 31, "I reviewed the project file, and, without attempting to assess fault, I concluded that these differences were not likely to be resolved." Asked why he didn't attempt to assess fault, he replied,

"Fault is not the question. It is a question of whether we think the co-op and its agent can work together effectively in the future. If it appears that they can't, then we terminate."

There was no testimony on either side illuminating the character or the nature of the amendment to the agreement requested by Lancaster, or of the disputes, and no testimony contradicting Mr. Dodd.

### 1. *Substantive due process*

The agreement permitted HUD, a government agency (as well as the mortgagee, who apparently was nongovernmental), to cancel "with or without cause." At least the government agency was limited to the extent that its choice could not be completely whimsical. Government could not act under the cancellation provision if motivated only by disapproval of the contractor's religion or politics. See Cafeteria Workers v. McElroy, 367 U.S. 886, 898, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The cancellation could be challenged for fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment. United States v. Wunderlich, 342 U.S. 98, 99, 72 S.Ct. 154, 96 L.Ed. 113 (1951). It could be challenged by demonstrating that there was no rational basis for the decision. Scanwell Laboratories, Inc. v. Shafer, 424 F.2d 859, 869 (1970); M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289, 1301 (1971). Cf. Jeffries v. Turkey Run Consolidated District, 492 F.2d 1, 3 (7th Cir., 1974).

We conclude that there is a substantive due process standard for valid action under the cancellation provision, but we think it was fulfilled in this case. The government has both a financial interest, in a proprietary sense, and a governmental interest, in terms of the public welfare, in successful operation of the housing project. Prima facie, at least, the reason given by Mr. Dodd, to the effect that it is good policy for the government to cancel an agency agreement where there are disputes between agent and owner not likely to be resolved, and, as a result, a probability that these parties can not work together effectively, is rational in view of the government's interests in successful operation, and not arbitrary or capricious.

The district court emphasized the fact that some part of the dispute arose from Lancaster's desire for an amendment to the agreement, and the fact that Moynahan was not bound to agree. In the face of the stipulation of the parties to the existence of disputes over several months, and the lack of any evidence as to their nature, we think the district court was in error in the view it took of the nature of the difference between the parties.

### 2. *Procedural due process*

In Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971), the Supreme Court held that when a claim to procedural due process is asserted, the court must first identify the nature of the interest allegedly infringed. "We must look to see if the interest is within the Fourteenth Amendment's protection [in this case the Fifth Amendment's protection] of liberty and property." *Roth*, p. 571.

In *Roth* at page 577, the Court said,

"Certain attributes of 'property' interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

The agreement before us provided for benefits for both parties, and ran for a fixed term. Neither party could terminate the agreement without the consent

of the other, except on the occurrence of one of several specified events not present here, and almost wholly outside the control of any of the people concerned. The government argues that Moynahan's agreement to cancellation by HUD "with or without cause" was a voluntary waiver of hearing. For present purposes, the argument really amounts to saying that the presence of the provision prevented Moynahan's interest in the continuation of the agreement from being a property interest.

■ We think the argument is unsound, and that Moynahan had a property interest in an agreement which was of benefit to it and which had a fixed term even though subject to the contingency of cancellation by a third party. This is particularly true since, as concluded in part 1, above, the government's option to cancel is limited to something less than a completely whimsical choice. The situation considered in Adams v. Walker, 492 F.2d 1003 (7th Cir., 1974), where this court decided that an Illinois public officer did not have a property right in his office, differs in many particulars from the one before us now. In *Adams* the governor's power of removal, which in some degree corresponds to the right to cancel in this case, was deemed, as a result of applicable state law, to be wholly unreviewable.

■■ The next question to arise is the nature and type of notice and hearing required to afford due process. Notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective are required. Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L. Ed.2d 113 (1971). Bearing in mind the nature of Moynahan's interest, and that, because of the broad discretion given to HUD, Moynahan's right is, essentially,

to be protected from arbitrary action without a rational basis, we conclude that the minimum requirements are a written statement of the reasons for the proposed action and an opportunity to present material, at least in writing, challenging the accuracy of supposed facts relied on and the rationality of the reasons stated. Since the facts have been stipulated here, we need not describe the minimum in terms of procedure to which Moynahan would have been entitled if the facts were disputed.

■ In this case the written notice, citing only a request by Lancaster for the termination, was an inadequate statement that the reason for cancellation consisted of the disputes, not likely to be resolved, which were deemed to impair the effectiveness of the project. A meeting did occur, however, between representatives of Moynahan and HUD, and there has been no showing that this meeting was inadequate either because Moynahan was not sufficiently aware of the reason motivating HUD to cancel or because Moynahan was frustrated in making its response. The parties have stipulated, as already stated, that the disputes did exist over a period of months.

Moynahan had an opportunity at the hearing in district court to present evidence, if it had any, rebutting either the factual basis or the genuineness of the reason then given for cancellation or the adequacy of the opportunity it had to present its position. Under all the circumstances, we deem the deficiencies in the notice of cancellation to have been adequately cured.

■ The district court, as already noted, seemed to limit the basis for HUD's decision to cancel to an attempt to force Moynahan to agree to some proposal by Lancaster, not described in the record. In discussing the point, the court used the term "unconscionable." Noting that reference, Moynahan argues that the cancellation provision in the agreement is itself unconscionable. Doubtless those, like Moynahan, desiring to be agents for cooperative housing

projects with federally insured mortgages enjoy little bargaining power with respect to the cancellation provision. We are not persuaded, however, that that fact renders the provision unconscionable and that we should therefore hold the provision ineffective.

Insofar as the judgment appealed from declared the cancellation of the agreement of November 9, 1970 a nullity, it is reversed; insofar as it enjoined HUD from terminating similar agreements without following due process requirements, as interpreted in this opinion, it is affirmed. Each party shall bear his own costs on appeal.

SPRECHER, Circuit Judge (dissenting).

I respectfully dissent. I find no authority for crippling the power of the government to exercise a range of discretion consonant with contractual rights freely bargained with private contractors.