**PENNER INSTALLATION CORPORATION v. UNITED STATES.**

No. 47266.

United States Court of Claims.

April 3, 1950.

546

Albert Foreman, New York City, for the plaintiff. M. Carl Levine, Morgulas & Foreman, New York City, were on the brief.

John R. Franklin, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for the defendant.

Before JONES, Chief Judge, and WHITAKER, HOWELL, MADDEN and LITTLETON, Judges.

WHITAKER, Judge.

The Government filed a motion for a new trial in this case, which we overruled. It then filed a motion for leave to file a second motion for a new trial, asserting that the issues in this case and in the case of Moorman v. United States, 113 Ct.Cl. 159, 82 F. Supp. 1010, then pending in the Supreme Court on certiorari to this court, were the same, and requesting that if its motion 'for leave to file a second motion was granted, that it be held in abeyance until the Supreme Court's decision in the Moorman case.

We granted the defendant's motion, and the Supreme Court has now decided the Moorman case, 338 U.S. 457, 70 S.Ct. 288.

Defendant says that the Moorman decision, as well as others precludes us from overruling a finding of the contracting officer made in good faith, and that since his findings in this case are against the plaintiff, they preclude recovery.

The Moorman case involved the conclusiveness of the findings of the contracting officer on the question of the interpretation of the contract and specifications. In this case we are concerned only with the conclusiveness of his findings on questions of fact. His findings on questions of fact are alleged to be binding upon us in this case.

It has been said many times that findings of fact of a contracting officer, affirmed on appeal, are conclusive, unless the evidence shows he acted arbitrarily or capriciously or that his decisions were so grossly erroneous as to show bad faith.

This exception to the conclusiveness of his findings was first expressed by the Supreme Court, so far as we know, in Burchell v. Marsh, 17 How. 344, 349, 15 L.Ed. 96. It was reiterated in Kihlberg v. United States, 97 U.S. 398, 24 L.Ed. 1106; in United States v. Gleason, 175 U.S. 588, 602, 20 S.Ct. 228, 44 L.Ed. 284; in Ripley v. United States, 223 U.S. 695, 701, 32 S.Ct. 352, 56 L.Ed. 614, and in Merrill-Ruckgaber v. United States, 241 U.S. 387, 36 S.Ct. 662, 60 L.Ed. 1058 and in others.

However, for his decision to be conclusive it must have been rendered "with due regard to the rights of both the contracting parties". Ripley v. United States, supra, 223 U.S. at page 701, 32 S.Ct. at page 355, 56 L.Ed. 614. In that case the court said: "But the very extent of the power and the conclusive character of his decision raised a corresponding duty that the agent's judgment should be exercised not capriciously or fraudulently, but reasonably, and with due regard to the rights of both the contracting parties."

In other words, the contracting officer must act impartially in settling disputes. He must not act as a representative of one of the contracting parties, but as an impartial, unbiased judge. If the evidence shows he has failed so to act, there can be no doubt that we have jurisdiction to set aside his decision. Northern Pacific Railway Co. v. Twohy Bros. Co., 9 Cir., 95 F.2d 220, 225; Anderson v. Imhoff et al., 34 Neb. 335, 51 N.W. 854, 856.[1] The duty to act impartially was imposed upon him by the contract. If we are convinced he has failed to discharge this contractual obligation, then his decision cannot have that finality provided for in the contract, and we are free to decide the case as we see it.

Some contracting officers regard themselves as representatives of the defendant, charged with the duty of protecting its interests and of exacting of the contractor everything that may be in the interest of the Government, even though no reasonable basis therefor can be found in the contract documents; but the Supreme Court has said that in settling disputes this is not his function; his function, on the other hand, is to act impartially, weighing with an even hand the rights of the parties on the one hand and on the other.

So, when a case comes before us in which the contracting officer rules against the contractor, and there is no substantial basis in the contract to support his ruling, or no substantial evidence to support it, or when his decision is grossly erroneous, we can hardly conclude that he has acted impartially; we can hardly say that he has been faithful to his duty to render impartial decisions; or, to paraphrase the language of prior decisions, that he has acted in good faith. We have said this same thing before. See the well considered discussion of this question in an opinion delivered for the court by Judge Littleton in Needles v.

1. In the case last cited the court said:
"* * * If, however, the arbitrator so chosen should refuse to perform the duties required of him, or should collude with either of the parties, and thereby render an unjust award, the adverse party would not be bound by a decision so rendered. It is a fundamental principle in considering awards that fraud, partiality, or willful misconduct of the arbitrator will be a sufficient cause for setting the award aside. * * *"

United States, 101 Ct.Cl. 535, 600-607, and see also Loftis v. United States, 76 F.Supp. 816, 110 Ct. Cl. 551, 630, et seq., and Mitchell Canneries v. United States, 77 F.Supp. 498, 111 Ct.Cl. 228, 247, and cases cited in these opinions.

We are always loath to say that a governmental official has acted in bad faith. Indeed in the many cases that have come before this court there have been but very few instances in which we have found, or thought, that the contracting officer was unfaithful to the Government. Their fidelity is beyond reproach. But it often happens that they misconceive their function. Faithful to the Government they almost always are, but frequently they are lacking in impartiality. And, yet, this is the duty the disputes clause of the contract (article 15) casts upon them.

It is a duty not easily to be discharged, we know. They are the Government's representatives, charged with the duty of seeing that the Government gets what it bargained for. Many contractors, on the other hand, bent upon making as much money as they can out of the contract, are constantly seeking ways out of doing this and doing that. Frequently, it is a constant battle—the contracting officer as the Government's representative, on the one hand, and the contractor on the other. To ask the contracting officer to act impartially when he must decide a dispute between the contractor and his employer is, indeed, putting upon him a burden difficult to bear. And yet the contract requires him to do so.

■ So, if in any case we say that the contracting officer has not acted in good faith, we mean only that he has not in good faith discharged his duties as an impartial, unbiased judge. We do not at all mean to impugn his fidelity to his employer. Indeed, it is this fidelity to his employer that makes it so difficult for him to act impartially.

■ We take it, then, that in deciding whether or not the contracting officer's decisions are conclusive upon us, we must decide whether or not he has acted without bias and impartially. If so, they are binding; if not, they are not binding.

■ In considering whether or not the contracting officer has acted impartially it is, of course, proper to take into consideration in any case, whether or not actual bias is shown, the correctness of his findings, his relationship to the parties, the allegiance he avows, and the duties his employment by one of them casts upon him.

With these considerations in mind, we pass to the issues raised on the motion for a new trial.

■ In our opinion in this case rendered October 3, 1949, we gave the contractor judgment on account of ten different items. Two of the items were for extra work not ordered in writing. We were in error in awarding judgment for them, for the reason, as defendant points out in its motion for a new trial, that they were not ordered in writing, as required by article 5 of the contract. These two items were the cost of assembling lights, $16.00, and the cost of chipping macadam, $329.16.

Five of the other items were on account of errors made by the contracting officer in computing the quantities for which plaintiff was entitled to payment at unit prices. The contracting officer found that the plaintiff had dug 23,855 lineal feet of 6" x 18" trench; we found that plaintiff had in fact dug 27,296 lineal feet, or 3,441 lineal feet more than the contracting officer had found. We also found that the plaintiff had placed in the trenches 35,071 feet of cable, whereas the contracting officer computed 34,395 feet, a difference of 676 feet. We think the contracting officer was in error as to these two items.

The contracting officer found that the plaintiff had excavated only 203 cubic yards of trenches measuring more than 6" x 18", whereas, in fact, as we found, the contractor had excavated 629 cubic yards of such trenches. This was three times the amount found by the contracting officer. The defendant does not undertake to explain how the contracting officer, in making his computation, could have made so gross an error, one of more than 300 per cent.

The contract required plaintiff to install certain poles, which plaintiff offered in its

bid to install for $70.00 a pole. At this price the total amount of plaintiff's bid seems to have brought the total cost of the work above the figure defendant's agents were authorized or wished to spend, and plaintiff was requested to reduce its price for the installation of these poles to $35.00 a pole, upon the representation that the Government had determined that no poles at all would be required. Plaintiff, on this assurance, agreed to do so. Later, it was determined that certain poles had to be installed and plaintiff was directed to install them. It submitted an invoice therefor, based upon its original bid of $70.00 a pole, but defendant refused to pay it more than $35.00 a pole, the token figure submitted by plaintiff at the Government's request.

On account of certain changes in the plans it became necessary to install a two-inch conduit under 12th Street and Ford Avenue, two of the boundary lines of the airfield. Plaintiff was ordered in writing to do this work and was requested to submit a bid therefor. Plaintiff did the work and then submitted a bid of $32.00 a lineal foot, which seems to have been an excessive price. The defendant refused to pay this price, and asked for a further proposal. The parties were never able to get together on the price to be paid and the contracting officer then fixed a $4.00 a lineal foot as the amount to be paid. The evidence establishes, and we have found, that a fair and reasonable price for doing this work was $8.00 a lineal foot, which was twice the amount allowed by the contracting officer.

The other items for which we rendered judgment are smaller in amount and give no indication of arbitrary action on the part of the contracting officer.

■ We think, however, that it is impossible to conclude that the contracting officer had acted impartially and with due regard to the rights of the plaintiff in determining that it was entitled to only $35.00 a pole for the number of poles installed, whereas plaintiff had bid $70.00 therefor and had reduced its price to $35.00 only because the contracting officer had represented that no poles were to be installed, and that he desired the reduction only to bring the cost of the work within the limits prescribed. We cannot but conclude that that decision was an arbitrary one and was rendered without any regard for plaintiff's rights or of the equities involved. Having induced plaintiff to reduce its bid from $70.00 a pole to $35.00 a pole, upon the representation that no poles were to be installed, it comes close to being unconscionable to have awarded plaintiff only $35.00 a pole for those which it later turned out had to be installed, contrary to expectations.

■ Again, we cannot conclude that the contracting officer acted fairly and impartially and with due regard to plaintiff's rights when he found that the amount of excavation of trenches measuring more than 6″ x 18″ was less than one-third of that actually done. Nor can we believe that he could have acted impartially when he found that the fair price of driving the conduit under 12th Street and 4th Avenue was only one-half of what we have determined was a fair price, and only one-eighth of the amount of plaintiff's original bid.

In view of his action on these three items, we are forced to conclude that he did not act with due regard to plaintiff's rights, that he did not act as an impartial, unbiased arbiter, and that his decision, therefore, must be held to have been arbitrary and capricious, and lacking in that good faith required of an unbiased, impartial arbiter.

The contracting officer's decision on all the items for which we rendered judgment was rendered at the same time. From the record as a whole we are convinced that the biased attitude which was evident in the instances which we have cited affected his decision upon all the items of the claim. We therefore reaffirm the judgment heretofore rendered, with the sole exception of the extras not ordered in writing, to wit, the cost of assembling lights, $16.00, and the cost of chipping macadam, $329.16.

Defendant's motion for a new trial is allowed. The former judgment is withdrawn and judgment will now be rendered for $3,465.76.

The findings will be amended by adding a new finding at the conclusion to read as follows:

"22. The decisions of the contracting officer and the head of the department on plaintiff's claim were arbitrary and so grossly erroneous as to imply bad faith."

HOWELL, MADDEN, and LITTLETON, JJ., and JONES, C. J., concur.