KENNY CONSTRUCTION COMPANY,
Appellant,

v.

DISTRICT OF COLUMBIA et al.,
Appellees.

No. 14429.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 17, 1958.

Decided Jan. 22, 1959.

Mr. John Wattawa, Washington, D. C., for appellant.

Mr. Hubert B. Pair, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Oscar P. Mast, Asst. Corporation Counsel, were on the brief, for appellee.

Before PRETTYMAN, Chief Judge, and EDGERTON and WILBUR K. MILLER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

September 30, 1954, Kenny Construction Company contracted with the District of Columbia to do certain street and sewer construction at an estimated price of $2,343,974. Partial payments were to be made monthly to Kenny as the work progressed, with 10% retained until "completion and acceptance of the work." Such retention of 10% was provided for by statute,[1] in obedience to which it was required.

As also required by the contract, appellant furnished to the District (1) a Performance and Payment Bond in the penal sum of $2,343,974, guaranteeing to "save harmless and indemnify the District from any and all claims, delays, suits, costs, charges, damages, counsel fees, judgments, and decrees to which said District may be subjected at any time on account of any injuries to persons or damage to property or premises that occur as a result of any act or omission of the principal [Kenny Construction Company] in connection with the prosecution of the work, and pay the same," and (2) evidence that in addition to the liability for injuries to persons, it carried for itself total liability insurance of $500,000 for damages from injury to or destruction of property, and a like amount of liability insurance for any such damages with respect to operations performed by its subcontractors.

The work went forward despite litigation brought by Greenway, Inc., to enjoin its continuance because of anticipated danger to its nearby apartment buildings.[2] On August 13, 1956, officials of the District inspected the work and found it complete and satisfactory "with the exception of restoration of private property,"—a reference to the allegedly endangered apartment houses.

On August 30, 1956, when the District of Columbia took possession of the project, the balance due on the contract was $291,131.31, exclusive of claims for extra work not here in issue. Payment of this agreed balance was refused by the District on the ground that the apartment buildings had not been restored, whereupon Kenny appealed to the District Contract Appeals Board. That Board held that, as there was no contractual authority for the retention of more than 10% of the partial payments,[3] the sum of $46,810.18 (the amount by which the retained sum of $291,131.31 exceeded 10% of the partial payments allowed) should be paid to Kenny forthwith, but without interest as no authorization existed for payment of interest on withheld partial payments. The Board also held that the contract had not been fully performed in that the apartment houses

1. Section 1–807, D.C.Code (1951).
2. Kenny's suggestion that the plans and specifications be altered to eliminate the danger was rejected by the District.
3. Ten per cent amounted to $244,321.13.

had not been restored, and that the sum of $244,321.13 could therefore properly be withheld, although Kenny had furnished a performance bond and liability insurance in that respect as required by the contract.

A motion for reconsideration having been denied by the District Contract Appeals Board, Kenny filed this suit against the District of Columbia and its Commissioners [4] asking the United States District Court for the District of Columbia to declare, *inter alia,*

"That the sum of $244,321.13, representing the retained percentages, is being wrongfully withheld from plaintiff herein, and is forthwith due and payable to it by defendant District of Columbia, together with interest thereon at six percent per annum from August 30, 1956, to date of payment;

"That interest on the sum of $46,810.18 is due and payable to plaintiff herein by said District at six per cent per annum from August 30, 1956, to date of actual disbursement of said sum to plaintiff herein as directed in said Decision [of the Contract Appeals Board]."

The District Court granted the District's motion to dismiss the complaint, and Kenny appeals.

Section 15 of the contract is said by the District to bar this action. It follows:

"Except as otherwise specifically provided in this contract, all disputes concerning questions arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within thirty (30) days to the Contract Appeals Board, whose decision

shall be final and conclusive upon the parties thereto * * *. In the meantime the contractor shall diligently proceed with the work as directed."

Such a provision, argues the District, has been held to make the administrative decision final unless it was founded on fraud, alleged and proved, and fraud was not charged or shown here. It cites in support United States v. Wunderlich, 1951, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113, which is the latest utterance of the Supreme Court on the subject, and which does indeed so hold. Subsequent to that decision, however, and for the purpose of overcoming its effect,[5] (and before the execution of the contract under consideration here), Congress enacted on May 11, 1954, legislation which included material which is now §§ 321 and 322 of Title 41 U.S.C.A., which are as follows:

§ 321. "No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

§ 322. "No Government contract shall contain a provision making final on a question of law the deci-

4. Hereinafter, the parties defendant, who are appellees here, will be referred to as "appellee" or "District" or "District of Columbia."

5. The legislative history of these sections shows their purpose was "to overcome the effect of the Supreme Court decision in the case of United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154 [96 L.

Ed. 113], rendered on November 26, 1951, under which the decisions of Government officers rendered pursuant to the standard disputes clauses in Government contracts are held to be final, absent fraud on the part of such Government officers." U. S. Code Cong. & Ad. News 1954, 83rd Cong., 2d Sess., pp. 2191–2197.

sion of any administrative official, representative, or board."

The District of Columbia urges that this legislation, which has to do with contracts of the United States Government, has no application here since the District is an entity apart from the federal government. The appellee overlooks the fact that in citing the Wunderlich case and another somewhat similar,[6] both of which dealt with contracts of the United States Government and not those of the District of Columbia, it was relying not on factual identity but only on the principle announced therein. That principle having been changed by legislation, the cases are no longer authority on the point.

Moreover, and dispositive of the point, the Wunderlich case dealt only with decisions on questions of fact. The United States Government contract there involved provided [342 U.S. 98, 72 S.Ct. 155]: " * * * [A]ll disputes concerning questions of fact * * * shall be decided by the contracting officer," and that the decision of the department head upon appeal shall be final. The Court was careful to emphasize that it was dealing with questions of fact. The District of Columbia contract with which we are here concerned broadened that provision to include all questions; its terms are: " * * * [A]ll disputes concerning questions * * * shall be decided by the contracting officer," etc. The Wunderlich decision is therefore not authority for the District's position. Concerning questions of law the Congress has declared its policy in the statute we have just quoted. It has denied finality to administrative decisions on questions of law. Only questions of law are here involved. They are: (1) whether the retained 10% was limited to insuring only that the actual work be completed, or whether it also covered the restoration of damaged property; and (2) whether interest should be allowed on the sum of $46,810.18.

We hold the decision of the Appeals Board was not final and binding on the parties as to these questions, and that appellant could maintain this action.

Kenny's first contention is that "The liability insurance, and the provisions of the bond, constitute the expressly designated protection to the District under the terms of the contract, and the District cannot lawfully enlarge such coverages by superimposing upon them, without appellant's consent, the coverage of the withheld retents, payment of which to the appellant has been consented to by the surety under the bond, notwithstanding its knowledge of the pendency of the damage suit."

Thus appellant's argument is that the contractual provision for the retention of 10%, to insure completion of the project, had been wrongfully construed by the District of Columbia and the Appeals Board as insuring also the restoration of damaged property. That is to say, Kenny urges that the word "work" in the provision authorizing the retention of 10% until "completion and acceptance of the work" means merely the construction of the project itself, and does not mean the accomplishment of other contractual requirements such as the restoration of damaged property. We do not agree. In our view, the word "work" in the retention clause includes all tasks contractually required of Kenny.

The appellant further argues that, having the performance bond and liability insurance as protection "under the terms of the contract," the District of Columbia does not need and is not entitled to a third protection derived by extending the coverage of the provision for retaining 10%. The performance bond was for a penal sum nearly ten times the total amount now retained, and the liability insurance was for a much larger sum than the withheld total. They were necessary for the District's protection, particularly in the early days of construction before the withheld amount had been built up to its present level.

6.  United States v. Moorman, 1950, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256.

They may still be necessary, for it is conceivable that the property damage, for which Kenny may be liable, is larger even than the sum now retained by the District.

■ To the extent that it may be required, the withheld money may be used to guarantee restoration, although the performance bond and the liability insurance are still in effect. It is one thing to have a performance bond and liability insurance which may require litigation for enforcement, but it is quite another and different thing to have a large amount of cash in hand which may readily be devoted to the purposes of the guaranty. Anyway, we think the contract gave the District of Columbia the triple protection of which Kenny now complains. We hold the 10% withheld was to insure not only the completion of the actual work but also the restoration of property damaged by the act or omission of the contractor; and that the District Court properly refused to order the District of Columbia immediately to pay the retained amount.

It should be noted that our holding is limited to what has just been said. Whether property of others has been damaged and, if so, the extent of such damage and the liability therefor, presumably will be adjudicated in the litigation instituted by Greenway, Inc., or in some other proceeding.

■ With respect to the sum of $46,-810.18, which the Appeals Board ordered the District of Columbia to pay as of August 30, 1956, and which the District did pay some time thereafter, we think Kenny is entitled to interest from August 30, 1956, to the date of actual payment. The Board refused to allow it because the contract does not authorize payment of interest on withheld payments. But this sum of $46,810.18 was in excess of the 10% authorized to be retained, and should not have been withheld at all. Interest on it therefore should have been allowed. In that par-

ticular, the District Court erred in dismissing the complaint.

Affirmed in part, reversed in part, and remanded for the entry of an appropriate order.

EDGERTON, Circuit Judge (dissenting).

The parties agreed that decisions of the Contract Appeals Board on "disputes concerning questions arising under this contract * * * shall be final and conclusive." Such agreements are valid unless legislation makes them invalid. They are valid not only as to questions of fact but also as to questions of law: "a conclusion that the question here is one of law cannot remove the controversy from the ambit" of the agreement which the parties "had a legal right" to make and did make. United States v. Moorman, 338 U.S. 457, 462–463, 70 S. Ct. 288, 94 L.Ed. 256.

With respect to "any contract entered into by the United States", Congress has limited Moorman. 41 U.S.C.A. §§ 321–322. But Congress has not limited Moorman with respect to contracts entered into by the District of Columbia. That § 321 covers only contracts entered into by the United States is obvious and undisputed. I think the next section 322, likewise covers only such contracts. In § 322, instead of repeating "United States" Congress used the term "Government", spelled with a capital G. That term, so spelled, quite commonly means the United States. In its present context I think it plainly means the United States.

Section 321 is entitled "Limitation on pleading contract-provisions relating to finality; standards of review". It says: "No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be

pleaded * * * as limiting judicial review of any such decision to cases where fraud * * * is alleged * *." Section 322 is entitled "Contract-provisions making decisions final on questions of law". It says: "No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board." Sections 321 and 322 concern similar problems and similar principles. I know of no reason to suppose that they concern different governmental units. No reason has been suggested why Congress, though it chose to legislate only for the United States in respect to the subject matter of § 321, should at the same moment choose to legislate for the District of Columbia as well as the United States in respect to the subject matter of § 322.

Neither this legislation nor the House Report mentions the District of Columbia. H.R.Rep.No.1380, 83d Cong., 2d Sess. (1954). When Congress wishes to legislate regarding contracts of the District of Columbia as well as contracts of the United States, Congress names the District of Columbia as well as the United States. Thus § 35 of Title 41 provides: "In any contract made and entered into by any executive department, independent establishment, or other agency or instrumentality of the United States, or by the District of Columbia * * * for the manufacture or furnishing of materials, supplies, articles, and equipment in any amount exceeding $10,-000, there shall be included the following representations and stipulations: * *." Section 321 of Title 40 (not 41) U.S.C.A. provides: "The service and employment of all laborers * * * employed by the Government of the United States or the District of Columbia * * * is limited and restricted to eight hours in any one calendar day * * *."

I think we should enforce the agreement the parties made. We disregard it if we review the decision of the Contract Appeals Board.