JONAL CORPORATION, Appellant,

v.

DISTRICT OF COLUMBIA.

No. 74–1191.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 16, 1975.
Decided March 18, 1976.
Rehearing Denied April 21, 1976.

John F. Myers, Washington, D. C., with whom Kahl K. Spriggs, Washington, D. C., was on the brief for appellant.

David P. Sutton, Asst. Corp. Counsel for the District of Columbia, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief for appellee.

Before LEVENTHAL and ROBB, Circuit Judges and MERHIGE,* United States District Judge for the Eastern District of Virginia.

Opinion for the Court filed by District Judge MERHIGE.

Concurring opinion filed by Circuit Judge ROBB.

Opinion filed by Circuit Judge LEVENTHAL, dissenting in part.

MERHIGE, District Judge:

Appellant, a Maryland corporation doing business in the District of Columbia, takes this appeal from the summary judgment of the District Court holding that decisions of the District of Columbia Contract Appeals Board are subject to the limited scope of judicial review provided in the Wunderlich Act, 41 U.S.C. §§ 321–22 (1970). Jonal sought payment of $71,726.13 allegedly due for work done pursuant to a contract with the District of Columbia to build several water pollution control plant buildings.[1] Since the amount in controversy exceeds

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. The plaintiff seeks $6,491.00 for the construction of the two water pollution control plant buildings to a greater height than that called for in the plans and specifications, $25,635.13 for the performance of certain paving work not included in the plans and specifications, delay damages in the sum of $30,000, and $9,600 representing the unpaid balance due under the contract.

$50,000, jurisdiction was conferred on the District Court by D.C.Code Ann., § 11–501(4) (1973).[2]

The facts, as appear in the record, are that following the completion of competitive bidding procedures, the District of Columbia, on April 13, 1967, awarded a contract for the construction of two water pollution control plant supply buildings to the appellant Jonal. The parties entered into a written contract on May 1, 1967 which incorporated by reference all the bid plans and specifications, and all the terms of the bid invitation. Article 15 of the contract contained the following provisions:

Disputes.—Except as otherwise specifically provided in this contract, all disputes concerning questions arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within thirty (30) days to the Contract Appeals Board, whose decision shall be final and conclusive upon the parties thereto, subject to the limitation of Sec. 3(b)(2) of Reorganization Plan No. 5 of 1952. In the meantime the contractor shall diligently proceed with the work as directed.

After the appellant began work in accordance with the contract, disputes arose over the proper interpretation to be given various notes appearing on the contract drawings. Jonal Corporation claimed that it had not contracted to perform specified items of work,[3] but the contracting officer decided to the contra and directed Jonal to proceed with the execution of the contract. Jonal accordingly performed the work under protest, and then submitted claims for compensation to the contracting officer for the alleged additional work. The contracting officer denied the claims and Jonal appealed to the District of Columbia Contract Appeals Board pursuant to the procedure outlined in Article 15 of the contract.

On March 7 and 8, 1972 hearings were held before a three-man panel of the Con-

tract Appeals Board. The members of the Board empanelled to hear the matter were Louis P. Robbins, Assistant Corporation Counsel for the District of Columbia,[4] Lou Frana, Assistant Corporation Counsel for the District of Columbia, and Gerald I. Sawyer, a Contracting Officer employed by the District of Columbia Department of Highways. Mr. Robbins and Mr. Frana were appointed by C. Francis Murphy, Chairman of the Contract Appeals Board for the District of Columbia and Corporation Counsel for the District of Columbia. Mr. Sawyer was appointed to the panel by Mr. Robbins. The counsel for the District of Columbia before the Board was James E. Lemert, assigned by Mr. Murphy to both defend the case and prosecute the District of Columbia's case against Jonal for liquidated damages. On February 16, 1973, the Board issued its findings of fact, conclusions of law, opinions and decisions denying appellant's claims.

On April 4, 1973, appellant filed suit, giving rise to this appeal, against the District of Columbia to recover the costs, expenses and damages occasioned by the alleged modifications in the original contract specifications. The District of Columbia answered the complaint on April 27, 1973 and moved for summary judgment on June 19, 1973, contending that disputes arising out of contracts entered into by the District are reviewable under the standards prescribed by the Wunderlich Act, and that the Court's review was restricted to the question of whether decision of the Contract Appeals Board was supported by "substantial evidence." On July 5, 1973, the appellant filed a "Counterstatement of Undisputed Facts" and a statement of "Points and Authorities in Opposition to Defendant's Motion for Summary Judgment." In those papers Jonal contended that the Court must first decide whether Organization Order No. 9, establishing the Board and its con-

2. This section has since been amended.

3. Disputes arose over the interior height of the plant buildings, and certain paving work around the buildings.

4. Mr. Robbins is presently Principal Assistant Corporation Counsel, District of Columbia.

stituency, violates, on its face, the Due Process Clause of the Fifth Amendment to the Constitution of the United States. In addition, the appellant argues that the Board was so created as to be inherently tainted, allowing the District Court to review *de novo* the Board's decision. Finally, the appellant noted that it "reserve(d) the right to file supplemental points and authorities in opposition to defendant's arguments on the limitation of (the District) Court's review, and the finality to be accorded the ruling of the Contract Appeals Board, . . . after the issues raised by this pleading are resolved."

On November 27, 1973, the District Court issued its memorandum and order which are the subject of this appeal. The trial judge held that appellant's constitutional claim "must fail for want of jurisdiction since the claim was not properly pleaded as a matter of form." The trial judge also held that the Wunderlich Act's standards of review are applicable to the case and, in accordance with those standards, that the appellee was entitled to summary judgment on the merits. "After a review of the whole administrative record, the Court finds that the District of Columbia Contract Appeals Board's decision was based on substantial evidence, and was not arbitrary or capricious." Op. at 6.

The appellee argues, in support of the District Court's ruling, that the appellant's procedural due process claim was belatedly proffered and improperly pleaded. This position has some justification. The Contract Appeals Board was established in 1953 and its composition, function and authority have remained essentially unchanged since its inception. *See* Reorganization Order No. 29, pt. VII, D.C.C.E. § 1–App. II 125 (1966), effective September 17, 1953. *See also* Or-

ganization Order No. 9, pt. VI, D.C.Code Ann. § 1–App. 235–36 (1973), effective June 6, 1968; Reorganization Plan No. 3 of 1967 § 303, 3 C.F.R. 345 (Comp.1967), 5 U.S.C. App. § 588 (1970). Yet, Jonal Corporation's constitutional objection to the Board's composition was not presented until after the contract containing the questioned grievance procedure had been knowledgeably executed in 1967 by its representative,[5] the administrative procedure had been completely exhausted on the contract issues, the case had been filed and fully pleaded in the District Court, and the defendant had filed a motion for summary judgment. Since the constitutional defect is allegedly inherent in the grievance procedure, the plaintiff, in fairness, ought to have presented its position at an earlier stage of the process.[6] We need, however, not reach the issue of whether such a delay in presenting the claim operates to bar this Court from further considering the argument, for we conclude that the appellant's procedural due process contention is lacking in substance.

Jonal Corporation argues that since the Corporation Counsel of the District of Columbia, or his designated representative, appointed all the members of the panel, and since the counsel for the District of Columbia was the Corporation Counsel of the District of Columbia, represented by an assistant Corporation Counsel, who was both defending the District of Columbia against Jonal's claim and prosecuting its claim for liquidated damages against Jonal, it was "being required to try its case before its adversary's lawyer." Br. 17.

In a matter involving a deportation proceeding, the Supreme Court held in *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), that due process was not

**5.** The trial judge noted "Jonal is no stranger to government contracts. It secured the disputed contract through competitive bidding and pursued its dispute before the Board in full recognition of the fact that the contract disputes clause . . . required all disputes to be referred to the Board 'whose decision shall be final and conclusive upon the parties.'" Op. 3, fn. 3.

**6.** Indeed, the trial judge held that the constitutional claim was improperly pleaded, and dismissed it under the authority of *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Also in issue is whether Jonal, by failing to assert the constitutional defense at the administrative hearing, waived his right to present it to the District Court. *See SEC v. R. A. Holman & Co.*, 323 F.2d 284 (2d Cir. 1963).

violated by the supervision of adjudicating officers by officials charged with investigating and prosecuting functions.

As noted above, the only complaint which petitioner can urge concerning the hearing procedures in this case is the objection that the special inquiry officer was subject to the supervision and control of officials in the Immigration Service charged with investigative and prosecuting functions. Petitioner would have us hold that the presence of this relationship so strips the hearing of fairness and impartiality as to make the procedure violative of due process. The contention is without substance when considered against the long-standing practice in deportation proceedings, judicially approved in numerous decisions in the federal courts, and against the special considerations applicable to deportation with the Congress may take into account in exercising its particularly broad discretion in immigration matters. 349 U.S. at 311, 75 S.Ct. at 762, 99 L.Ed. at 1116.

The decision has an informative history. Prior to the *Marcello* case, the Supreme Court had interpreted the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.*, to require the separation of administrative functions in deportation cases. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950). Six months thereafter, Congress expressly excluded deportation proceedings from specified sections of the Act so as to reinstate the proceedings suspended by the Supreme Court. Supplemental Appropriation Act of 1951, 64 Stat. 1048. In 1962 Congress enacted the Immigration Act, 8 U.S.C. § 1252, which specifically provided for various combinations of judicial, prosecutorial and investigative functions that seemingly ran counter to the Administrative Procedure Act. The Supreme Court in *Marcello* specifically held that the Immigration Act was intended by Congress to supersede the Administrative Procedure Act on the question of separation of functions, and denied the petitioner's claim of a due process violation.[7] The case has consistently been interpreted to stand for the general proposition that the combination in administrative procedures of judging with prosecuting or investigating functions is not, *per se*, a denial of due process. *E. g.*, *American Telephone and Telegraph Co. v. F. C. C.*, 449 F.2d 439, 455 (2d Cir. 1971); *Kinsella v. Board of Education of Central School District No. 7*, 378 F.Supp. 54, 60 (W.D.N.Y.1974); *Toney v. Reagan*, 326 F.Supp. 1093, 1099 (N.D.Cal.1971); K. Davis, *Administrative Law Treatise* § 13.02, p. 1975 (1958); cf. *Escalera v. New York City Housing Authority*, 425 F.2d 853, 863 (2d Cir. 1970).

The Supreme Court only recently restated its position on the issue of combination of function in administrative agencies in a case involving a Wisconsin medical disciplinary board.

The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented. *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712, 723, 43 U.S.L.W. 4459, 4463 (U.S.1975).

Although *Withrow* is distinguishable on its facts from the present case—it involved a disciplinary board that had both instigated

---

7. The fact that deportation hearings by inquiring officers are subject to de novo review, and that the Wunderlich Act provides for limited review of the Contract Appeals Board decisions does not distinguish the *Marcello* opinion from this case. The due process requirements at the hearing level should not significantly fluctuate with the review standards. Review is not, nor should it be, a necessary requisite to affording a litigant his due process rights at the initial hearing.

the investigative proceedings and later ruled in a full and contested hearing on the existence of misconduct—the case's pronouncement of the presumption in favor of impartiality in administrative hearings irrespective of some overlap of adjudicative, prosecutorial and investigative function provides guidance in the present case.

██ Obviously, if personal bias or prejudice is apparent in the conduct of the administrative proceedings, there may well be grounds for the reversal of the administrative determination if the objection is timely brought. *See NLRB v. Washington Dehydrated Food Co.,* 118 F.2d 980 (9th Cir. 1941). Similarly, administrative decisions made by adjudicators with a pecuniary interest in the results of the proceeding may suffer reversal. *Cf. Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 1694, 36 L.Ed.2d 488, 493 (1973); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). However, the instant appellant has not advanced at any stage in these protracted proceedings, any claims of personal bias or pecuniary interest on the part of the membership of the Contract Appeals Board.

██ In conclusion, due process principles enunciated in *Marcello v. Bonds, supra,* controls us as to the constitutional issue. In the absence of evidence of actual personal bias or pecuniary interest, we hold that the fact that the Board membership was appointed by the Corporation Counsel, and the fact that the Corporation Counsel was also responsible for appointing an individual to prosecute and defend the case on behalf of the District of Columbia before the Board, does not, *per se,* constitute a violation of the due process clause of the Fifth Amendment.

Appellants also argue that the constituency of the Contract Appeals Board excepts the Board's decisions from the limited review provisions of the Wunderlich Act. 41 U.S.C. §§ 321–22 (1970). The Act refers to "any contract entered into by the United States," 41 U.S.C. § 321, and has been applied by this Circuit to contracts entered into by the District of Columbia. *Kenny Construction Co. v. District of Columbia,* 105 U.S.App.D.C. 8, 262 F.2d 926 (1959).

*See also, District of Columbia v. Heman Ward, Inc.,* 261 A.2d 836 (D.C.Ct.App.1970). However, the Act expressly excepts certain decisions from its limited review provisions.

No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however, that any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.* 41 U.S.C. § 321 (Emphasis added).

Appellants argue that the formation of the Board by appointment of the Corporation Counsel should lead this Court to conclude that the Board's decision was "capricious or arbitrary or so grossly erroneous as to imply bad faith."

██ The terms "arbitrary" and "capricious" are typically associated with constitutional due process standards. *See Wickard v. Filburn,* 317 U.S. 111, 129, 63 S.Ct. 82, 91, 87 L.Ed. 122, 137 (1942); *Nebbia v. New York,* 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940, 949 (1933). Accordingly, the Court interprets the standard intended to be established by the use of those terms to be the appropriate constitutional due process standard. To hold otherwise would be to engage in subtle definitional exercises that are confusing and of questionable historical origin. Since the constituency of the Board does not violate the constitutional due process standards set out in *Marcello,* it did not render a decision on the controversy in issue that, without further evidence, can be said to be arbitrary or capricious.

██ Similarly, although due process discussions do not typically include the "so grossly erroneous as necessarily to imply

bad faith," standard,[8] it would be difficult to hypothecate an administrative adjudication that both violates this standard and yet is within the constitutional boundaries set by the due process clause. Appellants assert that the grossly erroneous standard should be interpreted in light of the Court of Claims discussion in *Penner Installation Corporation v. United States,* 89 F.Supp. 545, 548, 116 Ct.Cl. 550, (1950) *aff'd by equally divided Court,* 340 U.S. 898, 71 S.Ct. 278, 95 L.Ed. 651 (1950):

> So, if in any case we say that the contracting officer has not acted in good faith, we mean only that he has not in good faith discharged his duties as an impartial, unbiased judge. We do not at all mean to impugn his fidelity to his employer. Indeed, it is this fidelity to his employer that makes it so difficult for him to act impartially. . . .
>
> In considering whether or not the contracting officer has acted impartially it is, of course, proper to take into consideration in any case, whether or not actual bias is shown, the correctness of his findings, his relationship to the parties, the allegiance he avows, and the duties his employment by one of them casts upon him.

Even if this Court were to adopt the standard of the *Penner* case, it would not support the appellant's position that the inherent composition of the Board necessarily imports a finding of bias in all of the Board's decisions. In *Penner,* the Court of Claims carefully analyzed the contracting officer's decision before finding actual bias.

> In view of his action on these three items, we are forced to conclude that he did not act with due regard to plaintiff's rights, that he did not act as an impartial, unbiased arbiter, and that his decisions, therefore, must be held to have been arbitrary and capricious, and lacking in that good faith required of an unbiased, impartial arbiter. 89 F.Supp. at 549.

*Penner* does not stand for the proposition that a contracting officer's position, as an employee of the government, inherently biases his decisions. Rather it stands for the commonly accepted proposition that if actual bias is shown in a contracting officer's decision, the decision must be reversed. Furthermore, the Court in *Penner* clearly equates the good faith standard to the standard of arbitrariness and capriciousness. The other case noted by the appellants, *Commonwealth Coating Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), was premised on a finding of impropriety on the part of the decision maker because of his undisclosed financial ties to one of the litigants. There, one of the arbitrators had rendered substantial services for one of the parties to the dispute, and had not informed the other party of this relationship. The Court there held that the "undisclosed business relationship" required a reversal of the arbitration board's decision. "We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." 393 U.S. at 149, 89 S.Ct. at 339, 21 L.Ed.2d at 305. The instant case does not involve a non-disclosure problem; the appellants were fully aware when they signed the contract with the District of Columbia of the procedures and composition of the Contract Appeals Board. In conclusion, the grossly erroneous standard should also be equated with the constitutional due process standard. Since the due process standard established by *Marcello* has not been violated in the instant case, the Court concludes that the grossly erroneous standard similarly has not been violated.

■ Finally, the appellants argue that the District Court improperly determined that there was substantial evidence to sup-

---

**8.** The language of the statute itself would seem to imply that an application of the grossly erroneous standards involves an assessment of the actual decision of the Board in light of the evidence presented at the hearing. However, this Court will assume that the language is not so limited, and that it also goes to the validity of the procedural processes involved in the hearing.

port the Board's finding. It is alleged that certain items of documentary evidence and the twelve exhibits introduced during the hearings before the Contract Appeals Board were not before the District Court when it rendered its decision on the basis of the "whole administrative record." In the interests of justice, we conclude that the case should be remanded so that the District Court, if it has not already done so, may consider all pertinent parts of the administrative record, including the documentary evidence and exhibits aforementioned.

We deem it appropriate to point out that our remand is for the limited purpose of having the trial court file an amended and supplemental finding reflecting either that it had considered all documentary evidence and exhibits in reaching its conclusion or has, since remand, considered same and amends or affirms, as it deems appropriate, its judgment order.

ROBB, Circuit Judge (concurring):

I concur in Judge Merhige's opinion and add a few words.

With full knowledge of the composition, functions and authority of the Contract Appeals Board the Jonal Corporation agreed by contract to submit disputes to the Board for decision. Thereafter without objection Jonal went to hearing before the Board. Only after the Board had rendered an adverse decision and Jonal had filed in the District Court its complaint for money due did the company question the composition of the Board. In these circumstances I think Jonal waived any challenge it might have made and that our decision might be rested upon that ground alone.

LEVENTHAL, Circuit Judge (dissenting in part):

This is a contract case in which plaintiff Jonal Corporation, a Maryland Corporation, which entered into a contract with the District of Columbia to build certain water pollution control plant buildings for $297,000, claims money due for work done.[1] The complaint was filed on April 4, 1973, at a time when a civil action filed in the District of Columbia, even between residents of the District, was within the exclusive jurisdiction of the United States District Court if the amount in controversy exceeded $50,000.[2]

On June 19, defendant District of Columbia moved for summary judgment, setting forth that a dispute arose between the parties as to the interior height of the buildings, called for by notes on certain contract drawings, and as to which party was to perform certain paving work, turning on the meaning of language in the revision block of another contract drawing; that after supplying the buildings and performing the work requested by the agents of the District, Jonal filed claims for an equitable adjustment of price and an extension of time; that these claims were denied by the Project's contracting officer; that plaintiff appealed to the District of Columbia Contract Appeals Board, was accorded a full evidentiary hearing, and that the Board upheld the decision of the Contracting Officer.[3]

On July 5, 1975, the plaintiff filed a Counter-Statement of Undisputed Facts. This document referred to the Disputes clause of the contract[4] providing that disputes concerning questions arising under

---

1. Jonal alleges (a) it was required to erect two water pollution control plant buildings to a height allegedly higher than that called for by the specifications, at a cost of $6,491: (b) it was required to do paving work not called for by the contract, at a cost of $25,635.13, and (c) the additional work delayed final completion with a resulting extra cost of $30,000. Finally Jonal claims a $9,600 unpaid balance on the contract.

2. D.C.Code Ann. § 11–501(4) (1973).

3. Appeal No. 355 (building height claim), No. 356 (paved claim).

4. "Article 15. Disputes—Except as otherwise specifically provided in this Contract, all disputes concerning questions arising under this Contract shall be decided by the Contracting Officer subject to written appeal of the Contractor within thirty (30) days to the Contract Appeals Board, whose decision shall be final and conclusive upon the parties thereto, subject to the limitations of Sec. 3(b)(2) of Reorganization Plan No. 5 of 1952. In the meantime

the contract shall be decided by the contracting officer, subject to appeal to the Contract Appeals Board, whose decision shall be final and conclusive; and in the meantime the contractor shall diligently proceed with the work as directed.

Paragraph 12 of the Counter-Statement, quoted in the margin,[5] sets forth the organization of the Contract Appeals Board under Organization Order No. 9 of the then Commissioners of the District of Columbia.

Paragraphs 13, 14 and 15 of the Counter-Statement set forth the members of the Board as follows: Louis C. Robbins, Assistant Corporation Counsel, as chairman; Lou Frana, an Assistant Corporations Counsel; and Gerald I. Sawyer, a contracting officer in the D.C. Department of Highways. "Mr. Sawyer attended only the morning session of the hearing on Appeal CAB, No. 355, although the hearing lasted almost two days." In these appeals counsel for the District of Columbia was James E. Lemert, assigned by the Corporation Counsel.

A Preliminary Statement filed by plaintiff—apparently along with the Counter-Statement—stated that the District's motion papers indicated it was attempting to limit the court's review to a "Wunderlich Act" review, as to whether there is substantial evidence in the record; that plaintiff submits that before the court decides whether review is so limited it must first decide plaintiff's contention that Order No. 9 violates the due process clause, and its further contention that Order No. 9 and the Contract Appeals Board, as constituted in CAB No. 355 and 356, also violates the provisions of the Wunderlich Act, 41 U.S.C. § 321. The Preliminary Statement concluded: "Plaintiff reserves the right to file a supplement opposing the claim of finality to be accorded the rulings of the Board in these cases after the issues raised by this pleading are resolved."

I

The first question is whether the principles of the Wunderlich Act apply so as to curtail judicial review in this case, and if so to what extent.

A

In general, dispute clauses in District of Columbia contracts are subject, in the same

---

the Contractor shall diligently proceed with the work as directed."  (App. 8)

5. The Contract Appeals Board, D.C. was established on June 6, 1968 by Organization Order No. 9 of the then Commissioners of the District of Columbia, Title 1, District of Columbia Code, at 235–36 (1973 ed.), and provides in pertinent part as follows:

"PART VI

"*Contract Appeals Board*, D.C.—A.  There is established a Contract Appeals Board, D.C., consisting of one or more active or retired Assistant Corporation Counsel designated by the Corporation Counsel, one of whom shall serve as Chairman of the Board, and two or more persons appointed or designated by the Commissioners from among officers assigned to the Corps of Engineers and detailed to assist the Commissioners pursuant to Sec. 503(b) of Reorganization Plan No. 3 of 1967, or from among active or retired District of Columbia officers and employees who have had practical experience in the administration of government contracts. Except as otherwise provided by its rules, all business of the Board shall be conducted by panels of not less than three members at least one of whom shall be an active or retired Assistant Corporation Counsel member, but any two members of a panel shall constitute a quorum for the transaction of any business of the Board.

"No person shall serve as a member of a panel in the decision of any case in which the appeal has been taken from the action of a Contracting Officer or Alternate Contracting Officer of the department of which he is, or at the time of his retirement was, the Director or an employee, or in which he has participated directly in any aspect of the award or administration of the contract involved.

\* \* \* \* \* \*

"D.  The Chairman of the Contract Appeals Board shall, from time to time, assign members to panels of the Board, shall be responsible for obtaining the necessary secretarial assistance for the Board and for maintaining centralized custody over all records of the Board, and may, from time to time, designate a member to serve as acting chairman during his own absence, disqualification or disability."

way as a Federal contract, to the Wunderlich Act principle.[6]

The contract provisions for finality of decisions of the Contract Appeals Board are not applicable as written, in that they are not conclusive as to questions of law, and are conclusive as to matters of fact if, and only if, they are supported by substantial evidence. *Kenny Construction Co. v. District of Columbia*, 105 U.S.App.D.C. 8, 262 F.2d 926 (1959); *District of Columbia v. Heman Ward, Inc.*, 261 A.2d 836 (D.C.C. App.1970).

Under this "substantial evidence" rule, the law of Government contracts has become assimilated to doctrines of administrative law. *United States v. Carlo Bianchi & Co., Inc.*, 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652, 657 (1963). However, the decision of the Contract Appeals Board is not reviewable under the Administrative Procedure Act of the District of Columbia. *Gunnell Construction Co. v. Contract Appeals Board*, 282 A.2d 556 (D.C.C.App.1971). Judge Nebeker stated (at p. 558): "Where the result reached by the Board does not satisfy the parties concerned they are left with the traditional remedies at law and any questions of contractual rights should be resolved in a suit on the contract." And so in case of a dispute arising under the contract where the claim is made for money due pursuant to its provisions, the party may bring a suit on the contract, which the court will determine on the basis of whether there was substantial evidence to support the Board's findings. However, when the claim is for breach of contract, and not a dispute arising under the contract, the court provides an independent judicial determination. *United States v. Utah Construction Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). *Utah* also sets forth that if a "breach" claim overlaps a "dispute arising under the contract," any matter litigated before the Board in regard to dispute arising under the contract is to be determined

on the "substantial evidence" Wunderlich Act standard, and is not to be relitigated de novo in court.

B

This is general learning and background. What plaintiff says is that the principle of limited judicial review is not applicable at all in the case of a serious defect in the establishment and procedures of the Board of Contract Appeals.

Where there is such a defect in the organization and operation of a board of contract appeals, it does not have minimum objectivity, and the Wunderlich limitation may not govern the court hearing the contract action. The Supreme Court has stated "on several occasions that the parties will not be required to exhaust the administrative procedure if it is shown by clear evidence that such procedure is 'inadequate or unavailable.' It may be that the contracting officer or the Board of Contract Appeals so clearly reveals an unwillingness to act and to comply with the administrative procedure in the contract that the contractor or supplier is justified in concluding that those procedures have thereby become 'unavailable.' " *United States v. Grace & Sons, Inc.*, 384 U.S. 424, 429–30, 86 S.Ct. 1539, 1542–1543, 16 L.Ed.2d 662, 667 (1966) (citations omitted). *See, e. g., Baltimore Contractors, Inc. v. United States*, No. 272–70, Order of Trial Judge Spector, at 4 n. 5 (Ct.Cl., Trial Div., June 17, 1975), referring, *inter alia*, to a complaint that board members shared a small office with an attorney for the contracting officer.

C

Plaintiff sought to present an issue of that kind in regard to the Board of Contract Appeals of the District of Columbia. This contention was not considered by the trial judge. He referred to the doctrine that federal court jurisdiction premised on a federal question must appear on the face

6. The Wunderlich Act, 41 U.S.C. § 321, is so named because it modified the result in *United* *States v. Wunderlich*, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951).

of a well-pleaded complaint.[7] The trial judge held that plaintiffs constitutional claim "must fail for want of jurisdiction since the claim was not properly pleaded as a matter of form."

In my view, this was error. This was not a case of federal question jurisdiction, but a case of simple jurisdiction of any contract claim involving more than $50,000 (see note 2). In accordance with *Gunnell*, plaintiff brought a suit on the contract. It was only when the District relied on a defense of finality that plaintiff had need to advance his constitutional claim to undercut that defense. This rebuttal did not have to be pleaded on the face of the complaint. The same considerations apply to plaintiff's claim that, apart from any constitutional requirement, the plaintiff is not bound by the Board decision in view of the requirement by implication from the Wunderlich Act of a disputes clause board and procedure that satisfy minimum Wunderlich Act requirements.

### D

That brings us to a consideration of the plaintiff's claim of unfairness. Appellee District argues that any complaint about the structure and composition of its Contract Appeals Board is frivolous.

Plaintiff's papers attack the composition of the Board of Contract Appeals of the District of Columbia on the ground that it is "indefensible" to provide for resolution of a contract dispute by two lawyers of the Corporation Counsel's staff, and another contracting officer.

It is commonplace for Federal agencies and departments to draw heavily on the general counsel's office to staff members of boards of contract appeals.[8] It is fair to assume that this fact alone would not undercut the Wunderlich Act, especially since the *Bianchi* ruling did not advert to the

dissent of Justice Douglas and his reference to "subnormal administrative procedures," 373 U.S. at 721, 83 S.Ct. at 1415, 10 L.Ed.2d at 662.

However, plaintiff identifies a problem not generally applicable to Federal agencies, that the D.C. Corporation Counsel is actively engaged in contract litigation, which in the Federal Government is the responsibility of a separate department (Justice), and that the D.C. Corporation Counsel was at one and the same time both defending against Jonal's claim and prosecuting a claim of the District against Jonal for liquidated damages (Br. 17).

Moreover, counsel for the District advised the court at oral argument that the District considers itself free under its regulations to permit the Corporation Counsel not only to assign members of his staff to the board, but to make such assignment, on a part-time duty basis, in such a way that on one day a lawyer may be a member of the board, sitting as a judge in a case tried by another member of the staff of the Corporation Counsel, although the day before and the day after he may be working alongside that colleague, or even under his supervision, in another matter.

Appellee says the Supreme Court in *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), has already upheld the constitutionality of deportation hearings by inquiry officers who are under the general supervision of a district or regional office. Deportation hearings have special tradition and requirements, due to exigencies of volume and location. Moreover, they are subject to a full administrative review by a national board of immigration appeals, staffed by members who are not subject to other assignment within the Immigration and Naturalization Service (INS), and it is only that board's independent evaluation of

---

**7.** C. Wright, Law of Federal Courts 59–62 (2d ed. 1970). *See, Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 390–95, 91 S.Ct. 1999, 2001–2004, 29 L.Ed.2d 619, 623–626 (1971). *Bell v. Hood*, 327 U.S. 678, 681, 66 S.Ct. 773, 776, 90 L.Ed. 939, 942 (1946).

**8.** *See*, passim, H. C. Petrowitz, Report prepared for the Senate Select Committee on Small Busi-

ness, Operation and Effectiveness of Government Boards of Contract Appeals, S.Doc.99, 89th Cong. 2d Sess. (1966). Professor Petrowitz's study is cited in *S & E Contractors, Inc. v. United States*, 406 U.S. 1, 17–18, 92 S.Ct. 1411–1420, 31 L.Ed.2d 658, 670 (1972).

the evidence that is entitled to "substantial evidence" deference by the courts.[9] In *Marcello,* the Court was able to thrust aside a claim that prejudgment affected the hearing inquiry by stressing that the board of immigration appeals had been insulated (pp. 313–14, 75 S.Ct. 752, 763, 99 L.Ed.2d 1107, 1117).

Except for INS cases, the only application of the *Marcello* doctrine has been in the domains of rulemaking,[10] which is poles apart from specific contract determination.

Moreover, I do not base my approach on constitutional grounds—or a lack of power in the legislature to prescribe a certain procedure even though lacking in optimum fairness. In the present case the legislative intent is not specifically delineated, as was the deportation legislation reviewed in *Marcello,* and there is room for the application of the doctrine that the legislature will be presumed to have contemplated procedures and organization that comport with basic fairness as discerned in the light of contemporary standards.[11]

The problem cannot be dismissed by saying that the same agency can combine prosecutorial and adjudicatory functions. An agency thus constituted may be called on to provide some separation during the course of adjudication. I do not say that the board as constituted is inadequate; I merely say that there is an issue that requires ventilation, as to how it works.

The District Court took note of the constitutional issue raised by plaintiff, but did not refer to the statutory issue—whether the board as constituted and operated was the kind of board that the Wunderlich Act had in mind as entitled to the "substantial evidence" rule. There are legislative-type recommendations that the boards of contract appeals should be restructured in the direction of complete separation from contracting officials and the general counsel's office.[12] But even assuming no change in

**9.** *See* 1 C. Gordon and H. Rosenfeld, Immigration Law and Procedure § 1.10, at 1–51, 1–59 (Rev. ed. 1975):

> Since 1939 the Board has been completely apart from the Immigration and Naturalization Service. It is a separate body in the Department of Justice, responsible only to the Attorney General, which reviews the determinations of immigration officers. Under the present allocation of responsibilities the Board is divorced from the enforcement apparatus and it is a quasi-judicial body with exclusively appellate functions.

>     \*     \*     \*     \*     \*     \*

> The Board thus can make its own independent determinations on questions of fact and law, and on whether discretionary relief should be granted. However, the Board will take into account that the special inquiry officer is primarily the trier of the facts with a better opportunity to assess credibility, and ordinarily will not alter his factual determinations. The Board's decisions are subject to . . . limited judicial review. . . .

> The functions of the Board, as described by its chairman, see Finucane, Procedure before the Board of Immigration Appeals, 31 Interpr. Releases 26, 30 (Common Council for American Unity, 1954):

> > If the case presents an issue as to the credibility of witnesses, due consideration is always given to the conclusions reached by the Special Inquiry Officer who had the witness before him, but the Board is in no sense bound by the findings of the Special Inquiry Officer even if supported by competent and

substantial evidence. In a word, the Board may make a de novo review of the record and makes its conclusions and findings irrespective of those made by the Special Inquiry Officer.

> The Supreme Court has held that although the board was established by the Attorney General, and not by statute, the Attorney General is bound by his own regulations, which require that the decisions of the board reflect its own independent judgment and not the dictate of the Attorney General. *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

**10.** *American Telephone & Telegraph Co. v. FCC,* 449 F.2d 439, 455 (2d Cir. 1971).

**11.** *Thompson v. Washington,* 162 U.S.App.D.C. 39, 52, 497 F.2d 626, 639 (1973).

**12.** *See* H. C. Petrowitz, Report prepared for the Senate Select Committee on Small Business, Operation and Effectiveness of Government Boards of Contract Appeals, Sen.Doc.99, 89th Cong. 2d Sess. 148–49 (1966): "*Board independence.* Boards of contract appeals should be as independent of contracting and legal activities of the agencies within which they are established as possible. Only by doing this will the necessary confidence in their objectivity be developed. This means that board members should not be organizationally associated with contracting offices, procurement policy offices, or the office of general counsel, which in most agencies has the responsibility of defending

statutes, the question is to what extent the Wunderlich Act gives boards drawn from offices of general counsel and contracting officers full "substantial evidence" deference if there is day-to-day intermeshing of duties and varied working relationships with the officials presenting particular claims.

In my view, the case should be remanded so that the district judge may conduct a hearing that would flesh out how the board operates, and the working relations of members of the board to other employees in the Office of the Corporation Counsel, before he proceeds to decide whether, and to what extent, its decisions are entitled to the benefit of the "substantial evidence" rule.

E

The District Court alluded, without a ruling, to the possibility of estoppel.[13]

The mere fact that Jonal exhausted a non-judicial remedy is not an estoppel on Jonal to claim that the non-judicial ruling is not conclusive on the court in the contract suit. The doctrine of primary jurisdiction may require exhaustion of a non-judicial remedy even when there will be no application of the "substantial evidence" rule.[14] For years prior to *Bianchi*, contractors first prosecuted appeals to boards of contract appeals, and then obtained independent review in the Court of Claims. This remedy is still open as a "fail safe," when the board remedy is marred.

As for the claim that plaintiff is estopped for failure to present its challenge to the board, I do not see how an estoppel doctrine could be operative if the board was in no position to remove the problem of domination by the Corporation Counsel of which plaintiff complained. That condition inheres in the regulations binding on the board. Plaintiff's contention did not mean that the board, established pursuant to the regulations, had to cease forthwith. It had a role in making the record, assuming no procedural irregularity, and in screening out the need for court litigation in those cases where even such a board would conclude that the contracting officer had failed to make the equitable adjustment promised by the contract.

It would have been better procedure for plaintiff to state its position to the board. And its failure to do so might weaken its position to maintain certain contentions—a point I need not now crystallize. It suffices here to say it was not completely precluded from presenting an attack on the nature of the board in support of a claim that the board's decision was not entitled to the benefit of the "substantial evidence" rule.

I dissent from the failure to require the district court, on remand, to consider the questions identified in this opinion in order to determine whether *Wunderlich's* "substantial evidence" principle is operative. Assuming that principle is operative, I concur in the court's order of remand, which accepts an alternative presentation of appellant, to assure there has been full submission on the sufficiency of the evidence on the whole record, and a considered ruling identifying whether there is substantial evi-

---

against claims before the boards. No matter how carefully an agency may try to isolate board members from the other activities within the office of general counsel, having the board organizationally within that office inevitably casts a shadow on its independence."

The Report of the Commission on Government Procurement (1972) recommended that agency boards of contract appeals be retained "as quasi-judicial forums and strengthened by adding additional safeguards to assure objectivity and independence. * * * Agency boards would be more objective if all members of the boards were selected in a manner that minimized their ties to the agency head. This

would be achieved if they were chosen in the same manner as hearing examiners under the Administrative Procedure Act." (vol. 4, pp. 20, 21) The Commission also recommended that contractors be given the option of direct access to the courts (*id.* at 23).

13. "In view of the fact that Jonal submitted to the jurisdiction of the Board without constitutional challenge it is open to question, as the District has suggested, whether Jonal is not now estopped to raise that issue."

14. *Wheelabrator Corp. v. Chafee,* 147 U.S.App. D.C. 238, 248, 455 F.2d 1306, 1316 (1971).

dence supporting the decision of the board of contract appeals.[15]

---

**15.** The district judge provided only a conclusory recital that there was substantial evidence supporting the Board's disposition, without a single reference in his opinion, which discusses other issues in some depth, to a single item of the underlying evidence, nor even a bare citation to an exhibit or page transcript.